# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of | ) DIVISION ONE |
| | ) |
| A.M.M., DOB: 9/16/2006, | ) No. 70832-5-I |
| M.A.M., DOB: 5/28/2008, | ) |
| A.M.M., DOB: 12/16/2009, | ) (Consol. with Nos. 70833-3-I, |
| | ) 70834-1-I, 70835-0-I, 70836-8-I, |
| Minor children. | ) 70837-6-I) |
| | ) |
| BRIAN MARES, | ) |
| | ) PUBLISHED OPINION |
| Appellant, | ) |
| | ) |
| BRITTANY KNOPFF, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| STATE OF WASHINGTON, | ) |
| DEPARTMENT OF SOCIAL AND | ) |
| HEALTH SERVICES, | ) |
| | ) |
| Respondent. | ) FILED: August 4, 2014 |
| | ) |

DWYER, J. — Brian Mares and Brittany Knopff appeal from the trial court's order terminating their parental rights to their three children. Mares contends that the trial court erred by failing to apply the law in effect at the time of its ruling, and that insufficient evidence was admitted to establish that all required services had been provided to him. Knopff contends that the Department of Social and Health Services (the Department) failed to satisfy the exacting requirements of due

process when it neglected to provide notice of a parental deficiency upon which the trial court relied in terminating her parental rights, and that the Department failed to discharge its statutory burden by not providing her with a parenting coach.

In reversing the trial court's termination decision as to Mares, we hold that the trial court failed to apply the law that was in effect at the time of its decision. This error manifests itself in the Department failing to satisfy its burden of proof as to all statutory factors. In reversing the trial court's termination decision as to Knopff, we hold that she was not provided with constitutionally adequate notice of one of the parental deficiencies upon which the trial court relied in terminating her parental rights. Accordingly, as to Mares, we reverse and remand to the trial court for further proceedings consistent with this opinion. As to Knopff, we reverse and remand to the trial court with instructions to strike from its findings the parental deficiency of which she did not receive adequate notice and to consider whether, on the basis of her remaining parental deficiencies, termination of her parental rights is nonetheless warranted.

I

Mares and Knopff are the biological parents of three children: A.M.M.,[1] M.A.M.,[2] and A.M.M.[3] In September 2011, Mares and Knopff were living separately. Their children lived with Knopff. Although Mares did not live with Knopff and the children, he generally saw the children two or three times a week.

---

[1] DOB: 9/16/2006.
[2] DOB: 5/28/2008.
[3] DOB: 12/16/2009.

Mares had a criminal history—including a history of domestic violence and of not complying with no-contact orders designed to protect Knopff—and he was enrolled in an outpatient treatment program, which he completed as a part of a drug offender sentencing alternative in May 2011.

On September 10, 2011, after Knopff was arrested for unlawful drug possession, the Department placed the three children in protective custody. Mares contacted the Department on September 12 and inquired about the children.

On September 13, the Department filed dependency petitions as to all three children. Although the children were briefly returned to Knopff on September 19, they were again removed on September 27 due to her failure to comply with drug testing requirements.

In late October, shortly after the dependency petitions were filed, Mares was arrested and held in the Pierce County jail. He was charged with assault in the third degree and violation of a domestic violence protection order; Knopff was the alleged victim. In November, he was convicted and sentenced to 43 months of incarceration. He had been incarcerated twice before for a total of 37 months. Mares' earliest estimated release date is September 18, 2014.

On November 23, 2011, Mares agreed to orders of dependency and the court entered a final dispositional order as to him. The dispositional order required Mares to participate in four services: (1) a drug and alcohol evaluation; (2) age appropriate parenting classes with an approved provider; (3) random drug screens through urinalysis three times per week; and (4) domestic violence

batterer's treatment by a state certified provider. The order provided for supervised visitation three times per week for two hours each visit. The Department never moved to modify visitation.

In January 2012, Mares was transferred from the Pierce County jail to the Airway Heights Corrections Center, which is located near Spokane. Mae Henderson, the social worker assigned to Mares' case, did not offer any services to Mares prior to his transfer. Henderson testified that after Mares was transferred to Airway Heights, she spoke with someone at the corrections facility about the services the facility offered and sent Mares a service letter. She admitted that a copy of this letter had not been provided to any of the parties and was unsure whether there was a note in the case file documenting her recollection of speaking with someone at Airway Heights. Additionally, she was unaware whether the prison administration would have allowed the Department to provide any services to Mares while he was incarcerated. Finally, she did not attempt to set up visitation between Mares and the children and did not seek modification of the visitation order.

Ashley Peres replaced Henderson in March 2012. She sent Mares three service letters designed to explain his service requirements. Within these letters, she informed Mares that he could participate in substance abuse treatment while he was incarcerated and that the urinalysis and parenting class requirements would "be deferred until you are released from incarceration." Peres also included a list of programs available at Airway Heights, which she had copied and pasted from its website. However, Peres failed to mention the court-ordered

domestic violence batterer's treatment as a service that Mares needed to complete. Peres also failed to specify that Airway Heights, in general, only offered substance abuse treatment to prisoners who were approaching their release date.

On April 20, 2012, Mares wrote a letter to Peres in which he inquired as to the welfare of his children and added, "I wish I could see them." Peres responded on May 1, enclosed some photographs of the children, and recounted her interactions with them. However, she did not attempt to arrange for visitation or advise Mares that visitation was available. On June 29, Peres wrote to Mares, telling him that the children's foster parents wanted to take them to Montana for a week and asking whether he would agree to this arrangement. Mares agreed that the children could go, stating, "I want my children to be happy."

Social worker Leah Butler replaced Peres in October 2012. She sent three service letters that were identical in substance to those sent by Peres. Although Butler knew that Mares wanted to see his children and that he missed them, she did not attempt to arrange for in-person or telephonic visitation. She also did not indicate that he could write to his children.

On December 5, 2012, the Department moved to terminate Mares' parental rights. The petition stated that Mares had been referred five times for each of the four court-ordered services. The Department alleged that Mares was not engaged in services, had not visited his children, and had not maintained regular contact with the Department.

The court held a consolidated trial on the termination petitions as to both

- 5 -

parents on July 18, 22, 23, 24, 25, and 29, 2013. Mares testified via telephone.

Mares was unaware that he could have formally requested visitation with his children, stating that he "didn't think that was an option that I had any right to." If Mares had known that he had a right to ask that his children come and see him, he would have "absolutely" wanted to have seen his children. He said that it "would have meant the world" to him to see his children and that he wanted to parent them once he was released. "I'll make it work. I mean, I'll do whatever I got to do, you know, legally, and not mess this up because I love my children. I want to be the person to bring them up, to raise them."

With regard to Knopff's case, on January 25, 2012, an agreed order of dependency was entered as to her. She was ordered to participate in intensive outpatient chemical dependency treatment and to follow all recommendations, to undergo random urinalysis twice per week, and to engage in appropriate parenting classes. Thereafter, on August 1, 2012, the court ordered her to participate in a psychological evaluation with a parenting component and to follow all recommendations.

Knopff did not complete her drug and alcohol treatment, never produced a clean urinalysis, and failed to appear for nearly half of her court hearings.

Her psychological evaluation was completed in January 2013. The evaluator, Dr. Steve Tutty, concluded, "It is unlikely . . . that Ms. Knopff can remediate her clinical and parenting deficits to a degree that would consistently and effectively meet the safety and developmental needs of her children within the timeframe established by the Department." At the time of the evaluation,

Knopff admitted that she was actively using heroin. Because of her active use, Dr. Tutty found that she was not amenable to treatment. Dr. Tutty noted that psychotropic medications might be helpful for Knopff; however, she would need to be sober for at least 60 to 90 days before medications could be prescribed. Dr. Tutty opined that Knopff would need to be sober and fully engaged in services for nine months before her ability to safely parent could be evaluated.

Although regular visitation was available to Knopff, she did not consistently take advantage of her opportunities to visit the children. Several witnesses, including the children's mental health counselor and clinical social worker, testified regarding the negative effects on the children that resulted from Knopff's inconsistent visits. The children were confused and angry and the inconsistency negatively impacted their feelings of safety and security. The children's behaviors regressed when visits resumed after not occurring for many weeks. This inconsistency was traumatizing to the children and contributed to the children receiving mental health counseling services.

At the termination hearing, a social worker testified that one of Knopff's parental deficiencies was that she lacked understanding of her children's developmental needs. During closing arguments, Knopff's defense counsel argued that the Department's failure to offer parent coaching to address Knopff's lack of understanding of her children's developmental needs was fatal to its case.

On August 2, 2013, the trial court entered orders terminating the parental rights of both Mares and Knopff. Mares and Knopff both appealed and their appeals were consolidated for disposition.

II

Mares contends that the trial court erred in terminating his parental rights. This error occurred, he avers, because the trial court failed to apply the law in effect at the time of its ruling. We agree and also conclude that the Department failed to satisfy its burden of proof as to the termination factor contained within RCW 13.34.180(1)(f).

To terminate parental rights, the Department must satisfy a two-step test. RCW 13.34.180(1),.190; In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010). First, the Department must prove, by clear, cogent, and convincing evidence, the six termination factors enumerated in RCW 13.34.180(1).[4] "Clear, cogent, and convincing evidence exists when the ultimate fact in issue is shown by the evidence to be 'highly probable.'" In re Dependency of K.R., 128 Wn.2d

---

[4] The six termination factors are:
   (a) That the child has been found to be a dependent child;
   (b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
   (c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
   (d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
   (e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . .
   (f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. If the parent is incarcerated, the court shall consider whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b); whether the department or supervising agency made reasonable efforts as defined in this chapter; and whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays or barriers experienced in keeping the agency apprised of his or her location and in accessing visitation or other meaningful contact with the child.
RCW 13.34.180(1).

129, 141, 904 P.2d 1132 (1995) (internal quotation marks omitted) (quoting In re Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)). The second step focuses on the child's best interest and is reached only if the first step is satisfied. A.B., 168 Wn.2d at 911.

"Where the trial court has weighed the evidence, review is limited to ascertaining whether the findings of fact are supported by substantial evidence, and if so, whether the findings support the conclusions of law and the judgment." In re Dependency of P.D., 58 Wn. App. 18, 25, 792 P.2d 159 (1990). "'Substantial evidence' is evidence in sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." In re Welfare of T.B., 150 Wn. App. 599, 607, 209 P.3d 497 (2009). The determination of whether the findings of fact are supported by substantial evidence "must be made in light of the degree of proof required." P.D., 58 Wn. App. at 25. Where, as here, the proof required is clear and convincing, "the question on appeal is whether there is substantial evidence to support the findings in light of the highly probable test." P.D., 58 Wn. App. at 25. Moreover, we defer to the trial court's credibility determinations when reviewing an order terminating parental rights. T.B., 150 Wn. App. at 607.

Before a court terminates the parental rights of someone who is incarcerated, the court must consider the following:

> [T]he court shall consider whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b); whether the department or supervising agency made reasonable efforts as defined in this chapter; and whether particular barriers existed as described in RCW 13.34.145(5)(b)

including, but not limited to, delays or barriers experienced in keeping the agency apprised of his or her location and in accessing visitation or other meaningful contact with the child.

RCW 13.34.180(1)(f). This language was added to subsection (1)(f) and became effective on July 28, 2013. SUBSTITUTE H.B. 1284, 63rd Leg., Reg. Sess. (Wash. 2013). Amended subsection (1)(f) twice references factors contained within a different provision—RCW 13.34.145(5)(b)—which also became effective on July 28, 2013. SUBSTITUTE H.B. 1284. Those six factors are as follows:

> (b) The court's assessment of whether a parent who is incarcerated maintains a meaningful role in the child's life may include consideration of the following:
>
> (i) The parent's expressions or acts of manifesting concern for the child, such as letters, telephone calls, visits, and other forms of communication with the child;
>
> (ii) The parent's efforts to communicate and work with the department or supervising agency or other individuals for the purpose of complying with the service plan and repairing, maintaining, or building the parent-child relationship;
>
> (iii) A positive response by the parent to the reasonable efforts of the department or the supervising agency;
>
> (iv) Information provided by individuals or agencies in a reasonable position to assist the court in making this assessment, including but not limited to the parent's attorney, correctional and mental health personnel, or other individuals providing services to the parent;
>
> (v) Limitations in the parent's access to family support programs, therapeutic services, and visiting opportunities, restrictions to telephone and mail services, inability to participate in foster care planning meetings, and difficulty accessing lawyers and participating meaningfully in court proceedings; and
>
> (vi) Whether the continued involvement of the parent in the child's life is in the child's best interest.

RCW 13.34.145(5)(b).

The effective date of these amendments is significant because, although the trial court entered its order terminating Mares' parental rights on August 2, 2013, it nowhere referenced the statutory considerations that had just recently become effective. This omission indicates both that the Department failed to satisfy its burden of proof as to the termination factor contained within RCW 13.34.180(1)(f) and that the trial court failed to apply the law in effect at the time of its ruling.

It was the Department's burden to prove by clear, cogent, and convincing evidence the six termination factors enumerated in RCW 13.34.180(1), most notably here, subsection (1)(f). Additionally, the trial court's resolution of the (1)(f) factor was to be informed by evidence presented and conclusions reached regarding the six factors contained in RCW 13.34.145(5)(b). Yet there is no evidence in the record suggesting that the Department presented evidence in an effort to satisfy its burden or that the trial court did, in fact, make the findings referenced in the amended subsection, while nevertheless somehow failing to memorialize its determinations in the findings of fact or conclusions of law.

Even so, the Department argues that the sum of the trial court's findings were adequate as a substitute for an explicit finding made regarding the amended language within RCW 13.34.180(1)(f) and RCW 13.34.145(5)(b). While the Department's suggested approach has not been categorically rejected by Washington courts, our Supreme Court's decision in A.B. made clear that, in order to imply or to infer a missing finding, all the facts and circumstances in the

record must clearly demonstrate that the omitted finding was actually intended.

> [W]hen an appellate court is faced with a record that omits an explicit finding of current parental unfitness, the appellate court can imply or infer the omitted finding if—but only if—all the facts and circumstances in the record (including but not limited to any boiler plate findings that parrot RCW 13.34.180) clearly demonstrate that the omitted finding was actually intended, and thus made, by the trial court. To hold otherwise would be illogical, and it would permit trial and appellate courts easily to sidestep the due process requirement that a judgment terminating parental rights be grounded on an actual (as opposed to a fictional) finding of current parental unfitness.

A.B., 168 Wn.2d at 921. Before a finding of current parental unfitness may be made, the Department must satisfy its statutory burden with regard to the termination factors and the trial court must make findings memorializing the Department's discharge of its burden. In view of this, the rationale of A.B. applies with equal force where the record omits an explicit finding as to any one of the termination factors.

Applying the rationale of A.B. to the facts in this case, it would be improper to infer from the record that findings as to RCW 13.34.180(1)(f) or as to RCW 13.34.145(5)(b) were intended to be made. Tellingly, the trial court applied the language contained within former subsection (1)(f),[5] but made no mention of the

---

[5] Compare "That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home." Former RCW 13.34.180(1)(f) (2013), and

> That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. If the parent is incarcerated, the court shall consider whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b); whether the department or supervising agency made reasonable efforts as defined in this chapter; and whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays

amended language added to RCW 13.34.180(1)(f) or to RCW 13.34.145(5)(b). Given this, we cannot conclude that all of the facts and circumstances in the record clearly demonstrate that the omitted findings were actually intended.

Nevertheless, the Department proposes that the trial court was not, in fact, required to apply the amended language. In support of this dubious and altogether unsupported proposition, the Department notes that the trial commenced ten days before the amendments became effective and that the presentation of evidence closed three days before the effective date. Controlling authority contravenes the Department's position: "'a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.'" Marine Power & Equip. Co. v. Wash. State Human Rights Comm'n Hearing Tribunal, 39 Wn. App. 609, 621, 694 P.2d 697 (1985) (quoting Bradley v. Sch. Bd. of City of Richmond, 416 U.S. 696, 711, 94 S. Ct. 2006, 40 L. Ed. 2d 476 (1974)); cf. Wash. State Farm Bureau Fed'n v. Gregoire, 162 Wn.2d 284, 304, 174 P.3d 1142 (2007) (concluding that the legislature is not "prohibited from 'pass[ing] a law that directly impacts a case pending in Washington courts'" (alteration in original) (quoting Port of Seattle v. Pollution Control Hearings Bd., 151 Wn.2d 568, 625, 90 P.3d 659 (2004))).[6] The Department was required to

_____

or barriers experienced in keeping the agency apprised of his or her location and in accessing visitation or other meaningful contact with the child.
RCW 13.34.180(1)(f), with "Continuation of the parent-child relationship between [A.M.M., M.A.M., and A.M.M] and [Mares and Knopff] clearly diminishes their prospects for early integration into a stable and permanent home." Findings of Fact 2.74

[6] The Department was provided with notice, given that the effective date (July 28, 2013) was 90 days after the governor signed the bill into law. See 2 NORMAN J. SINGER & J. D. SHAMBIE

satisfy its burden of proof as to all of the termination factors, and the trial court was required to apply the law in effect at the time of its ruling.[7] Neither did as was required. Accordingly, as to Mares, we reverse the trial court's order and remand for further proceedings consistent with this opinion.

III

Knopff contends that her constitutional due process right to adequate notice was violated because the trial court terminated her parental rights based, in part, on her lack of knowledge regarding her children's developmental needs, despite the fact that she was not notified that this would be considered a basis for termination.[8] We agree.

Parents have a fundamental liberty and property interest in the care and custody of their children. U.S. CONST. amends. V, XIV; WASH. CONST. art. I, § 3; Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); see In re Custody of Smith, 137 Wn.2d 1, 27, 969 P.2d 21 (1998). "The due process clause of the Fourteenth Amendment protects a parent's right to the custody, care, and companionship of [his or] her children." In re Key, 119 Wn.2d 600, 609, 836 P.2d 200 (1992) (citing Stanley v. Illinois, 405 U.S. 645, 651, 92 S.

SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 33:7 (7th ed. 2009) ("The purpose of the future effective date is to inform people of the provisions of a statute before it becomes effective so they may protect their rights and discharge their obligations.").

[7] The Department's alternative analysis, by which it attempts to demonstrate that the new law was not intended to be applied retroactively, is irrelevant: retroactive application is not at issue. See Aetna Life Ins. Co. v. Wash. Life & Disability Ins. Guar. Ass'n, 83 Wn.2d 523, 535, 520 P.2d 162 (1974) ("A statute operates prospectively when the precipitating event for the application of the statute occurs after the effective date of the statute, even though the precipitating event had its origin in a situation existing prior to the enactment of the statute.").

[8] Although Knopff did not make this challenge in the trial court, she may raise the issue on appeal. In re Dependency of A.W., 53 Wn. App. 22, 27, 765 P.2d 307 (1988) (citing RAP 2.5(a)(3) for the proposition that "errors of constitutional magnitude may be raised for the first time in the appellate court").

Ct. 1208, 31 L. Ed. 2d 551 (1972)). That right cannot be abridged without due process of law. U.S. CONST. amend. XIV. Accordingly, "[p]arental termination proceedings are accorded strict due process protections." In re Matter of Darrow, 32 Wn. App. 803, 806, 649 P.2d 858 (1982).

"Due process requires that parents have notice, an opportunity to be heard, and the right to be represented by counsel." Key, 119 Wn.2d at 611 (citing In re Myricks, 85 Wn.2d 252, 254, 533 P.2d 841 (1975)). More specifically, "the due process protections afforded parents in a termination hearing [include] . . . '[n]otice, open testimony, time to prepare and respond to charges, and a meaningful hearing before a competent tribunal in an orderly proceeding.'" In re Dependency of H.W., 70 Wn. App. 552, 555 n.1, 854 P.2d 1100 (1993) (quoting In re Moseley, 34 Wn. App. 179, 184, 660 P.2d 315 (1983)); see also Darrow, 32 Wn. App. at 809 ("[T]he trial court should assure that the parent is afforded a full and fair opportunity to present evidence or rebut evidence presented against him.").

It has long been deemed to be critical that parents receive notice of the specific issues to be considered.

> [C]onstitutional due process and fair treatment require that parents receive notice of the specific issues to be considered, including a clear and concise statement that the hearing may result in deprivation of all parental rights. The parents must be clearly advised in adequate time to meet that serious issue to prevent surprise, helplessness and disadvantage. Moreover, definite allegations of the purpose of the hearing are necessary to enable the parents to determine intelligently whether to admit or contest the petition.

In re Welfare of Martin, 3 Wn. App. 405, 410, 476 P.2d 134 (1970).

- 15 -

Knopff asserts that she was not notified prior to trial that her lack of knowledge regarding her children's developmental needs constituted a parental deficiency upon which termination could be based. Her assertion is borne out by the record. Neither the termination petition nor the dependency petition stated that Knopff's lack of knowledge regarding her children's developmental needs constituted a parental deficiency. Moreover, although the services that the State provided to Knopff pursuant to court order, as required by RCW 13.34.136, did include age-appropriate parenting classes, there is no evidence in the record that Knopff was ever informed that she could lose her parental rights if she did not adequately familiarize herself with her children's developmental needs.

Nonetheless, the trial court found that Knopff's ignorance regarding her children's developmental needs constituted a parental deficiency: "Ms. Knopff's identified parental deficiencies are significant substance abuse, her unavailability and lack of follow through, and *lack of knowledge regarding her children's developmental needs.*" Findings of Fact 2.31 (emphasis added). In addition, the trial court found, "[t]he children cannot continue to wait for their mother to address her parental deficiencies," and "[t]he children's best interests are served by terminating the mother's parental rights as the mother has not demonstrated she is able to meet the children's needs." Findings of Fact 2.83, 2.84.

While the Department is correct that the trial court made extensive findings with respect to Knopff's substance abuse, there was no finding that Knopff's substance abuse *alone* provided a basis for terminating her parental rights. Rather, the trial court's reasons for termination are expressed in the

conjunctive: the parental deficiencies, considered together, justify termination. Had the trial court determined that Knopff's substance abuse was alone sufficient to terminate her parental rights, it would have been incumbent upon the trial court to say so without equivocation. Because it did not, we decline to affirm on the basis of its extensive findings with respect to Knopff's substance abuse. Instead, we reverse the trial court's ruling as to Knopff and remand with instructions for the trial court to consider whether termination is appropriate on the basis of the parental deficiencies of which Knopff was given adequate notice. This will require the trial court to strike the finding that Knopff's parental deficiencies included "lack of knowledge regarding her children's developmental needs" as well as any additional findings supporting solely that finding.

IV

Knopff also contends that the Department failed to offer or provide her with all necessary and available remedial services, as required by RCW 13.34.180(1)(d). The remedial service which was improperly withheld, she asserts, was a parenting coach. We disagree.

As noted, the State may not sever parental rights unless it first demonstrates that "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided." RCW 13.34.180(1)(d). A service is necessary within the meaning of the statute if it is needed to address a condition that precludes reunification of the parent and child. In re Welfare of C.S., 168 Wn.2d 51, 56 n.3, 225 P.3d 953 (2010).

- 17 -

In support of her contention, Knopff analogizes to C.S., 168 Wn.2d 51. In C.S., because the Department provided the foster parents with training "deemed necessary" to effectively deal with the child's special needs without ever offering the mother the same thing, our Supreme Court reversed. 168 Wn.2d at 55-56. C.S. is readily distinguishable. Here, the foster parents were not provided with a parenting coach and Knopff's children did not have special needs, as did the child in C.S.[9]

Furthermore, the Department offered parenting classes to Knopff, which was consistent with the recommendation of Dr. Tutty. Dr. Tutty had evaluated Knopff and had observed Knopff and her children interact. Given his observation of Knopff and her children, he was well-situated to recommend appropriate services.

In contrast, the therapist who suggested parent coaching never observed Knopff and her children interact. Moreover, she testified that her parent coaching recommendation was a general recommendation, meaning that parent coaching would be beneficial to any parent. Given the indiscriminate nature of the therapist's recommendation, we are satisfied that the Department discharged its duty pursuant to RCW 13.34.180(1)(d). Parent coaching was not a necessary service.[10]

---

[9] In C.S., the child was diagnosed with attention deficit hyperactivity disorder, oppositional-defiant disorder, obsessive-compulsive disorder, and sensory integration disorder. 168 Wn.2d at 55.

[10] Knopff also contends that the trial court erred by failing to make a critical finding: namely, that the service of a parenting coach was unnecessary or unavailable. Although the trial court did not explicitly make such a finding, it did find that the Department had satisfied the requirements of RCW 13.34.180(1)(d). Knopff does not offer an explanation as to why this

Both causes are reversed and remanded to the trial court.

We concur:

---

finding was insufficient or cite any authority in support of her contention. Accordingly, we reject the contention.