2015 APR 20 AM 9: 52


IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of E.M.R.L., dob 07/14/05,<br><br>        A minor child.<br><br>CORINNA LOZANO,<br><br>        Appellant,<br><br>v.<br><br>STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES,<br><br>        Respondent. | No. 72241-7-I<br><br>DIVISION ONE<br><br><br><br>UNPUBLISHED OPINION<br><br><br><br><br><br>FILED: April 20, 2015 |

SCHINDLER, J. — Corinna Lozano appeals from the order terminating her parental rights to E.M.R.L. Because the record does not establish the trial court considered the mandatory statutory factors applicable to incarcerated parents, the Washington State Department of Social and Health Services (Department) did not meet its burden of proving the statutory termination elements by clear, cogent, and convincing evidence. We reverse the termination order and remand for further proceedings.

FACTS

Corinna Lozano is the mother of E.M.R.L., born on July 14, 2005. Until early 2013, E.M.R.L. lived with his mother. The father had virtually no contact with E.M.R.L.

Following an undercover investigation of suspected drug dealing, on January 29, 2013, police arrested Lozano at her Mount Vernon apartment. Police placed E.M.R.L. in protective custody.

On January 31, the Department filed a dependency petition. The petition alleged that during the undercover investigation, Lozano repeatedly sold drugs to a confidential informant at her apartment while E.M.R.L. stayed outside alone in the parking lot. Officers executing the search warrant found heroin in kitchen cupboards accessible to E.M.R.L. E.M.R.L. told a Department Child Protective Services social worker that his mother smoked a pipe "with grass weeds and the white powder."

In early February, the court placed E.M.R.L. with his paternal grandparents. On March 26, Lozano agreed to the entry of a dependency and disposition order. The disposition order required Lozano to obtain a substance abuse evaluation and follow any recommended treatment, submit to random urinalysis testing, and participate in parenting instruction and mental health services.

E.M.R.L. visited Lozano in jail on at least two occasions. Lozano was released from jail in April to participate in the drug court program. To satisfy the requirements for drug court, Lozano obtained a substance abuse evaluation and then entered chemical dependency and mental health treatment at Skagit Recovery Center. Lozano also agreed to submit to random urinalysis.

Department Child Welfare Services Social Worker Kim Baker observed that Lozano had "a lot of contact" with E.M.R.L. at the grandparents' home when she was first released from jail to participate in the drug court program. But Baker felt that Lozano did not use all available opportunities to visit or call E.M.R.L. and did not attend his soccer practices or games.

Lozano did not successfully complete the drug court program. In August, Lozano pleaded guilty to four counts of delivery of heroin and methamphetamine. Before entering the plea, Lozano visited E.M.R.L. and explained that she was going to prison. The court sentenced Lozano to 36 months confinement and 12 months of community custody. Lozano's earliest release date was March 2015.

Lozano was incarcerated at the Mission Creek Corrections Center for Women in Belfair. Lozano retained liberal privileges to contact E.M.R.L. by telephone or letter. At Lozano's request, the Department supplied postage for her letters. Lozano wrote to E.M.R.L. once or twice a week. Although the Department's plan contemplated that E.M.R.L. would visit Lozano, no visits occurred.

Lozano also asked the Department to provide credit for a telephone card so she could call E.M.R.L. The Department was unable to provide such support but E.M.R.L.'s grandparents repeatedly offered to provide funds for Lozano's telephone card. Lozano called E.M.R.L. only once or twice a month while she was at Mission Creek.

Lozano entered the therapeutic program at Mission Creek in November 2013. Based on her evaluation, Lozano required a high level of inpatient treatment for chemical dependency. The therapeutic program encompassed five phases of treatment. Lozano's progress during phase 3 was interrupted for a clinical intervention

following an incident of intimidation, a serious offense for the program. The intervention was reopened when Lozano exhibited additional behavior issues. During the intervention, Lozano utilized the mental health services available to her.

Chemical dependency counselor Kevin Barry reported that Lozano successfully addressed the issues that prompted the intervention and had "redirected her behavior to more positive and more motivational behaviors." At the time of the termination trial in June 2014, Lozano had completed three phases of the therapeutic program and was in full compliance. Barry also noted that the results of the regular urinalysis tests raised no concerns.

Barry estimated that Lozano needed a minimum of seven weeks to complete each of the two remaining phases. Barry felt that upon release, Lozano would also have to participate in an intensive outpatient treatment program to stabilize her behavior upon returning to the community.

Michael Jones, Lozano's prison classification counselor at the time of the termination trial, noted that Lozano was referred to a Partners in Parenting class in November 2013. But Lozano was not eligible to participate in the class until closer to her release date, during phase 4 or 5 of the treatment program. During those phases, Lozano would also be participating in moral reconation therapy, self-awareness and self-esteem classes, and various training programs. Lozano had also applied for community service crew jobs and was waiting to attend a beyond-trauma class.

Lozano received only two minor infractions at Mission Creek for failing to attend a scheduled appointment and not following rules. Jones believed that Lozano was taking "full advantage" of all of the services available to her in prison.

On February 18, 2014, the Department filed a petition to terminate Lozano's parental rights. E.M.R.L.'s father voluntarily relinquished his parental rights. Trial occurred on June 25, 2014. E.M.R.L. was almost nine-years-old at the time of the termination trial in June 2014.

Social Worker Baker testified that despite participation in various prison services, Lozano had not corrected her parental deficiencies. Baker characterized Lozano's progress in the therapeutic program as slow and inconsistent.

At the time of the termination trial, Lozano's earliest possible release date was more than eight months away. Baker believed that even if Lozano completed all prison services by the time of her release, she would then have to find safe and stable housing and employment and participate in intensive outpatient services. And even if Lozano's progress continued without problems, the earliest E.M.R.L. could return home was the end of 2015. Baker concluded that the "near future" for E.M.R.L. was about one month and that Lozano could not remedy her parental deficiencies within that period.

Marianne Yamashita, E.M.R.L.'s guardian ad litem, testified that E.M.R.L. had been doing very well in his current placement with the grandparents. Yamashita stated Lozano had never asked that E.M.R.L.'s placement be changed and the grandparents were meeting all of E.M.R.L.'s needs, including his medical concerns. Yamashita agreed with Baker that Lozano would need up to a year of stability before she would be ready to parent E.M.R.L. In Yamashita's opinion, the "foreseeable future" for E.M.R.L. was no more than three months.

Lozano testified telephonically from Mission Creek. Lozano denied the allegations that she was not properly supervising E.M.R.L. before the dependency.

5

Lozano acknowledged she had struggled with the requirements of the drug court program but maintained she was making progress in the treatment program at the prison. Lozano claimed that she now recognized the seriousness of her addiction and was learning how to address her behaviors and how to participate in the community.

Upon release, Lozano planned to get a job, continue treatment, and find a stable residence so that she can parent E.M.R.L. Lozano insisted she would not "associate with anybody who is not sober" and would set boundaries to prevent any regression into addiction.

The trial court terminated Lozano's parental rights. The court found that Lozano was currently unfit to parent E.M.R.L. The court noted that because Lozano's earliest release date was March 2015, her progress in prison programs at the time of release was uncertain. The court found, in pertinent part:

> [E]ven if everything went swimmingly [Lozano] would still have to have a significant length of time of stability in the community before the child could be returned to her. A child of this age, nine years old, is not able to contemplate that kind of future.

## ANALYSIS

To terminate parental rights, the State must prove by clear, cogent, and convincing evidence the six termination elements set forth in RCW 13.34.180(1)(a) through (f). RCW 13.34.190(1)(a)(i). Evidence is clear, cogent, and convincing if it establishes the fact in issue as "highly probable." In re Welfare of Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973).[1] If the State satisfies its burden under RCW 13.34.180(1), it must prove by a preponderance of the evidence that termination is in the best interests of the child. In re Dependency of K.N.J., 171 Wn.2d 568, 577, 257 P.3d 522 (2011).

---

[1] Internal quotation marks and citation omitted.

Lozano contends that the termination order must be reversed because the trial court failed to consider the recent statutory amendments pertaining to incarcerated parents. Lozano argues that the Department therefore failed to meet its burden under RCW 13.34.180(1)(f) of proving that continuation of her relationship with E.M.R.L. clearly diminished his prospects for early integration into a stable and permanent home. We agree with Lozano.

Prior to July 2013, former RCW 13.34.180(1)(f) (2009) required the State to prove that "continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home." Effective July 28, 2013, the legislature amended RCW 13.34.180(1)(f) to add three specific factors that the trial court must consider before terminating the parental rights of an incarcerated parent:

> If the parent is incarcerated, the court shall consider [(1)] whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b); [(2)] whether the department or supervising agency made reasonable efforts as defined in this chapter; and [(3)] whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays or barriers experienced in keeping the agency apprised of his or her location and in accessing visitation or other meaningful contact with the child.

LAWS OF 2013, ch. 173, § 4; see In re Dependency of A.M.M., 182 Wn. App. 776, 786, 332 P.3d 500 (2014).

Under RCW 13.34.180(1)(f), the court "shall" consider whether the parent maintains a meaningful role in the child's life and whether particular barriers exist based on the six factors identified in RCW 13.34.145(5)(b):

> (i) The parent's expressions or acts of manifesting concern for the child, such as letters, telephone calls, visits, and other forms of communication with the child;

7

(ii) The parent's efforts to communicate and work with the department or supervising agency or other individuals for the purpose of complying with the service plan and repairing, maintaining, or building the parent-child relationship;

(iii) A positive response by the parent to the reasonable efforts of the department or the supervising agency;

(iv) Information provided by individuals or agencies in a reasonable position to assist the court in making this assessment, including but not limited to the parent's attorney, correctional and mental health personnel, or other individuals providing services to the parent;

(v) Limitations in the parent's access to family support programs, therapeutic services, and visiting opportunities, restrictions to telephone and mail services, inability to participate in foster care planning meetings, and difficulty accessing lawyers and participating meaningfully in court proceedings; and

(vi) Whether the continued involvement of the parent in the child's life is in the child's best interest.

RCW 13.34.180(5) addresses permanent placement, including guardianship, for the children of incarcerated parents, and went into effect at the same time as the 2013 changes to RCW 13.34.180(1)(f) and .145(5)(b). LAWS OF 2013, ch. 173, §§ 3-4.[2]

In A.M.M., we reversed a parental termination order because the record did not demonstrate the trial court considered the 2013 amendments to RCW 13.34.180(1)(f). In making this determination, we noted that in cases involving incarcerated parents, the trial court's resolution of the RCW 13.34.180(1)(f) termination factor must be "informed by evidence presented and conclusions reached regarding the six factors contained in RCW 13.34.145(5)(b)." A.M.M., 182 Wn. App. at 787.

Contrary to Lozano's assertion, nothing in A.M.M. or the 2013 amendments requires the trial court to enter formal findings of fact regarding the consideration of

---

[2] RCW 13.34.180(5) states:

When a parent has been sentenced to a long-term incarceration and has maintained a meaningful role in the child's life considering the factors provided in RCW 13.34.145(5)(b), and it is in the best interest of the child, the department should consider a permanent placement that allows the parent to maintain a relationship with his or her child, such as, but not limited to, a guardianship pursuant to chapter 13.36 RCW.

8

RCW 13.34.180(1)(f) or the factors under RCW 13.34.145(5)(b). Rather, A.M.M. requires only that the record demonstrate the trial court considered the relevant statutory factors when determining whether the Department satisfied its burden under RCW 13.34.180(1)(f):

> [The trial court] nowhere referenced the statutory considerations that had just recently become effective. This omission indicates both that the Department failed to satisfy its burden of proof as to the termination factor contained within RCW 13.34.180(1)(f) and that the trial court failed to apply the law in effect at the time of its ruling.

A.M.M., 182 Wn. App. at 787.[3]

Here, there is no dispute Lozano was incarcerated at the time of the termination trial. The record establishes that the court did not address or even refer to the 2013 amendments or the specific statutory factors pertaining to incarcerated parents at any point during the course of the trial, in its oral decision, or in the written findings of fact and conclusions of law. Nor did counsel for either side direct any argument to the court based on the specific statutory amendments.

Nonetheless, the Department contends that it called the trial court's attention to the 2013 amendments in its memorandum of authorities filed on June 24, 2014, one day before the trial. The Department has moved for permission to file a supplemental designation of clerk's papers designating the memorandum. Lozano has moved to strike the designation because it contained the dependency cause number rather than the termination cause number.

We accept the Department's representation that it filed a working copy of the memorandum of authorities with the trial court despite the erroneous cause number.

---

[3] Emphasis added.

See Skagit County Local Civil Rule 7(e)(4). We therefore grant the motion to file the supplemental designation and deny Lozano's motion to strike.

However, the memorandum contains only a paraphrase of the amended language in RCW 13.34.180(1)(f) and a cursory argument that Lozano did not maintain a "meaningful relationship" with E.M.R.L. The memorandum does not specifically address whether the Department made "reasonable efforts" or whether particular barriers existed. See RCW 13.34.180(1)(f). Nor does the memorandum address or reference the factors enumerated in RCW 13.34.145(5)(b). Further, the Department relies on pre-amendment decisions and misleadingly suggests the evidence regarding the quality of the parent-child relationship is sufficient, standing alone, to satisfy "the State's burden of proof" under RCW 13.34.180(1)(f). Therefore, the fact that the trial court received a copy of the memorandum does not demonstrate the court considered all of the statutory factors.

The Department recites at length the evidence that it presented at trial "relating" to the factors identified in RCW 13.34.145(5)(b) and in the amended provisions of RCW 13.34.180(1)(f). But in a termination proceeding, evidence that is relevant under RCW 13.34.180(1)(f) may also be relevant to establish several of the other elements the Department must prove under RCW 13.34.180(1). The fact that the Department presented potentially relevant evidence under RCW 13.34.180(1)(f) does not, without more, establish what considerations informed the court's decision or whether the Department satisfied its evidentiary burden. Nor do the circumstances here support any inference that the trial court intended its decision to encompass implicit findings on the

2013 statutory amendments. See A.M.M., 182 Wn. App. at 788-89 (citing In re Welfare of A.B., 168 Wn.2d 908, 921, 232 P.3d 1104 (2010)).

Because the record does not demonstrate that the trial court considered all of the statutory factors under RCW 13.34.180(1)(f) and .145(5)(b), the Department did not meet its burden of proof under RCW 13.34.180(1)(f). See A.M.M., 182 Wn. App. at 789-90.

Lozano also contends the Department and the trial court erred by failing to consider a possible guardianship for E.M.R.L. Because we remand for further proceedings, we do not address this argument.

The Department's motion to file a supplemental designation of clerk's papers is granted and Lozano's motion to strike is denied. We reverse the termination order and remand for further proceedings consistent with this opinion.

WE CONCUR:

11