**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

In the Matter of the Dependency of:

D.A.N. (DOB: 04/08/2014),
D.R.N. (DOB: 02/03/2009),

          Minor children,

AMBER KAY ELLIOTT,

          Appellant,

          v.

STATE OF WASHINGTON,
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES,

          Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DIVISION ONE

No. 78414-5-I
(consol. with No. 78415-3-I)

UNPUBLISHED OPINION

FILED: March 11, 2019

DWYER, J. — Amber Elliott appeals the termination of her parental rights to her children, D.R.N. and D.A.N. She contends that the Department of Social and Health Services failed to carry its burden under RCW 13.34.180 and RCW 13.34.190 to prove that it offered all necessary services, that she is currently unfit, that the children cannot be returned to her in the near future, and that termination is in the best interests of the children. We affirm.

I

On May 18, 2016, seven-year-old D.R.N. and two-year-old D.A.N. were found in the cab of a U-Haul truck while their mother, Amber Elliott, was in the back preparing to inject drugs. The children had access to drug paraphernalia in the truck. They were removed from their mother and placed in the custody of the Department of Social and Health Services (Department).

At the time, the mother was already involved with the Department. She had previously been referred to Child Protective Services due to concerns about substance abuse, neglect, and inadequate food. However, believing that these referrals were a form of harassment by her neighbor, the mother had refused to participate in urinalysis (UA) test services.

The Department filed dependency petitions for both children. In its July 19, 2016 dependency order, the trial court ordered that the mother obtain a drug and alcohol evaluation, a mental health assessment, and follow the recommendations of those assessments. The mother was also ordered to participate in random UA testing, and to attend parenting classes.

The mother struggled to complete these services. More than a year after the court's order, and after three referrals by the Department, she submitted to a drug and alcohol assessment. The evaluator recommended a relapse awareness program, which the mother had not completed at the time of trial.[1]

---

[1] In her drug and alcohol evaluation, her mental health evaluation, and at trial, the mother denied recent or current drug use. She reported that she last used methamphetamines and heroin in 2014. However, she was found preparing to use drugs when her children were taken into protective custody in 2016, and she was found with heroin and drug paraphernalia shortly before trial in February 2018 during a shoplifting investigation.

Similarly, the mother delayed her mental health assessment until August 9, 2017. She was diagnosed with posttraumatic stress disorder and major depressive disorder, recurrent severe, and the evaluator recommended counseling. She participated in only two counseling sessions.

The mother was inconsistent with her UA testing. While she provided several tests that were negative over the course of the dependency, she also missed many. The mother did not complete the ordered parenting class. In her first enrollment, she had excessive absences. At the time of trial, she had again begun parenting classes.

During the dependency, the mother struggled with her physical health. She had three surgeries on her hip, and spent over a month in a nursing facility. She was confined to a wheelchair in the three months before trial. She requested and received some transportation accommodation from the Department to help travel to visits, but still struggled to make the journey from her home to the visitation location. While she requested that her mother attend visitations to help with some of her physical limitations, the Department denied that request.

At trial, Department social worker George Nelson testified that the mother made little progress during the course of the dependency, never graduating beyond supervised visits and was consistently late to those visits. He explained that the Department would not return her children until she could "establish sobriety, stabilize her mental health, . . . [attend] a parenting class to improve her

parenting, and stabilize her life in general." Nelson estimated that it would take "best-case scenario, at least a year" to complete those steps.

After observing the mother's conduct on the first day of trial, the court ordered that she submit to a UA test. The mother went to the testing facility, but did not produce a valid sample. After a two day trial, the court entered an order terminating the mother's parental rights.[2] She appeals.

II

Parents enjoy fundamental liberty interests in the continued care, custody, and companionship of their children. Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Deprivation of parental rights is only permissible if supported by powerful reasons. In re Welfare of A.J.R., 78 Wn. App. 222, 229, 896 P.2d 1298 (1995). A trial court's termination decision involves a two-step process. In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010). The first step focuses on the adequacy of the parents. The Department must prove the six termination factors set forth in RCW 13.34.180(1) by clear, cogent, and convincing evidence. A.B., 168 Wn.2d at 911. If this burden is satisfied, termination may be ordered if the Department establishes that it is in the best interests of the child by a preponderance of the evidence. In re Dependency of K.N.J., 171 Wn.2d 568, 576-77, 257 P.3d 522 (2011).

We review the trial court's decision for substantial evidence in light of the demanding standard of review. In re Parental Rights to B.P., 186 Wn.2d 292,

---

[2] The father's rights have been terminated.

313, 376 P.3d 350 (2016). Unchallenged findings of fact are verities on appeal. In re Welfare of A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015).

A

The mother argues that because the Department did not offer her a psychiatric evaluation, it failed to offer all necessary services capable of correcting parental deficiencies.

In order to terminate parental rights, the Department must prove that "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided." RCW 13.34.180(1)(d). Necessary services are those services "'needed to address a condition that precludes reunification of the parent and child.'" In re Parental Rights of K.M.M., 186 Wn.2d 466, 480, 379 P.3d 75 (2016) (quoting In re Dependency of A.M.M., 182 Wn. App. 776, 793, 332 P.3d 500 (2014)).

The trial court found,

> The mother's parenting deficiencies include mental health issues, substance abuse issues, lack of parenting skills, and ongoing criminal activity. Services offered to the mother have included drug/alcohol evaluations and treatment, random UA testing, parenting classes, a mental health assessment and treatment, and casework management.

Finding of Fact 2.11. The court further found that "all necessary services reasonably available, capable of correcting the parents' parental deficiencies within the foreseeable future, have been expressly and understandably offered or provided to the parents." With respect to the psychiatric evaluation, the court found,

> Debra Heinzer did not recommend a psychiatric assessment but the mother requested one. Ms. Heinzer testified that the mother could benefit from a psychiatric assessment and provided the mother with information on how to obtain one from Compass Health. No treating professional who worked with the mother ever made a recommendation that this was a necessary service. Nonetheless, this service was offered to the mother and the mother did not participate.

There is substantial evidence to support these findings. Heinzer conducted a mental health evaluation of the mother and diagnosed her with posttraumatic stress disorder and major depressive disorder. Heinzer recommended that the mother receive individual counseling. During the evaluation, the mother requested a psychiatric evaluation for medications. Heinzer believed that a medication evaluation "would have helped her" and instructed her on how to arrange one. But Heinzer did not recommend one. The mother did not get a psychiatric evaluation.

Heinzer did not recommend a medication management psychiatric evaluation as a necessary service, nor did any other provider. Her observation that the service may be "helpful" falls short of evidence that it is necessary. And while the mother at times took prescription medication, she did not at the time of trial. There is no evidence connecting her use of prescription medication to her parenting deficiencies, so the psychiatric evaluation is not a necessary service "'needed to address a condition that precludes reunification of the parent and child.'" K.M.M., 186 Wn.2d at 480 (quoting A.M.M., 182 Wn. App. at 793). A parent's request for a service is not sufficient to convert that service to a necessary one.

B

The mother argues that the termination order must be reversed because the Department failed to present evidence of what constitutes the "near future" for D.R.N. and D.A.N. under RCW 13.34.180(1)(e).

In termination proceedings, the Department must prove there is "little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future." RCW 13.34.180(1)(e). The focus of this element is whether parental deficiencies have been corrected. In re Dependency of K.R., 128 Wn.2d 129, 144, 904 P.2d 1132 (1995)). What constitutes the near future depends on the age of the child and the circumstances of the child's placement. In re Dependency of T.L.G., 126 Wn. App. 181, 204, 108 P.3d 156 (2005). Eighteen months was beyond the "near future" for a nearly four-year-old child who was in a placement that could provide a permanent adoptive home. In re Dependency of D.A., 124 Wn. App. 644, 657, 102 P.3d 847 (2004). One year was beyond the near future for a six-year-old who had been in foster care her entire life. In re Dependency of T.R., 108 Wn. App. 149, 166, 29 P.3d 1275 (2001).

Here, the trial court entered the following pertinent findings:

> 2.11 The mother's parenting deficiencies include mental health issues, substance abuse issues, lack of parenting skills, and ongoing criminal activity. Services offered to the mother have included drug/alcohol evaluations and treatment, random UA testing, parenting classes, a mental health assessment and treatment, and casework management.
> . . . .
>
> 2.22 Likelihood of Remedial Action

> There is little likelihood that conditions will be remedied so that the child can be returned to the parents in the near future.
>
> . . . .
>
> 2.26 In the best-case scenario, it will take at least one year for the mother to address her parental deficiencies if she started now. However, the first step is for the mother to recognize she has a problem, which she does not appear inclined to do.
>
> 2.27 One year is beyond the foreseeable future for three-year-old [D.A.N.] and nine-year-old [D.R.N.]. The children have been in care for nearly 22 months and need permanency.

Substantial evidence supports these findings. Despite numerous services over almost two years, the mother's parental deficiencies were not addressed. The mother does not challenge finding of fact 2.11, which lists her current parental deficiencies as mental health issues, substance abuse issues, lack of parenting skills, and ongoing criminal activity. Social worker Nelson testified that it would take "at least a year" in the "best-case scenario" for the mother to stabilize her life such that the Department would return her children. But he went on to explain that "there is no reason to believe that the pattern will change in the foreseeable future, as far as the mother's unwillingness or inability to access the services that she's been ordered to do and asked to do." Indeed, the mother testified that she did not have a problem with drugs or alcohol, had no weaknesses as a parent, and was not in need of any services. Given this attenuation between the mother's assessment of her parenting and the Department's perspective, substantial evidence supports that there was little likelihood that the mother could acquire adequate parenting skills in a future near

8

enough for her children. Under these circumstances, it was unnecessary that the Department establish a numerical "near future" for D.R.N. and D.A.N.

C

The mother argues that the Department did not prove that she was currently unfit to parent D.R.N. and D.A.N. because the Department did not show a connection between her alleged drug use and parental fitness.

A parent has a due process right not to have the relationship with a natural child terminated in the absence of a finding of current unfitness to parent the child. A.B., 168 Wn.2d at 920. The trial court found, in pertinent part,

> 2.11 The mother's parenting deficiencies include mental health issues, substance abuse issues, lack of parenting skills, and ongoing criminal activity. . . .
>
> . . . .
>
> 2.23 The mother is currently unfit to parent. The mother has failed to address her substance abuse issues and they remain ongoing. She has also not addressed her mental health issues and has failed to complete parenting classes.
>
> . . . .
>
> 2.25 The mother has been in and out of jail during the dependency. She was most recently arrested less tha[n] a month prior to the trial for shoplifting and found in possession of what the officer believed to be heroin and drug paraphernalia including a syringe, foil, and a spoon with burnt residue on it.

Substantial evidence supports the finding that the mother is currently unfit to parent her children. The mother was diagnosed with posttraumatic stress disorder and depression, but failed to address her mental health conditions through recommended counseling. Nelson testified that the mother is not currently able to parent her children because of her "untreated mental health

9

issues, lack of stability, questionable parenting skills, and just a – sort of a chaotic lifestyle in general that would not be conducive to raising a very dynamic three year old and a very bright nine year old." In addition, the mother lacked stability as a result of her ongoing criminal activity. Shortly before trial, she was arrested for shoplifting and found with what appeared to be drugs, and drug paraphernalia. At the time of trial, she had a warrant for her arrest. When asked where her children would go in the event she had to go to jail, the mother suggested that her mother and her sister would take care of them, even though the Department did not approve of either of them to be caregivers for D.R.N. and D.A.N. Notwithstanding her drug use, there is substantial evidence supporting the trial court's finding that the mother is currently unfit.

But the record also supports that the mother's uncorrected drug use impedes a good faith attempt to engage in services. Even if the drug use itself does not cause unfitness, it perpetuates the mother's parental deficits by presenting a barrier to remedying these deficits. For example, the mother denied that she was an active drug user during her mental health evaluation and chemical dependency evaluation. Both evaluators testified that their assessment results and recommendations could not be considered reliable if the mother withheld her substance abuse. The mother's denial of her drug use thus interfered with receiving and engaging with appropriate services capable of remedying her parental deficits. The trial court did not err in finding the mother currently unfit.

D

The mother argues that the trial court erred by finding that the continuation of the parent-child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home under RCW 13.34.180(1)(f). The only basis for this contention is her argument that the Department failed to prove that it provided necessary services and that her parental deficits could not be corrected in the near future. Because we have already rejected those arguments, we also reject her argument under RCW 13.34.180(1)(f).

Nevertheless, substantial evidence supports the trial court's finding that the continuation of the parent-child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. D.R.N. and D.A.N. were in their foster home, a prospective adoptive placement, for 13 months. They were "stable, thriving, bonded, they're comfortable and happy in their current home, and they're together. They have foster siblings that they have a relationship with." Social worker Nelson testified that the only legal barrier to permanency in the children's current home was the continuing legal relationship between the mother and the children.

E

The mother contends that the Department failed to prove that termination is in the children's best interests. "[T]he goal of a dependency hearing is to determine the welfare of the child and his [or her] best interests." In re Welfare of Aschauer, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). In order to terminate a parent-child relationship, the trial court must determine, by a preponderance of

11

the evidence, that termination is in the best interests of the child. RCW 13.34.190(1)(b). The factors involved in determining the best interests of a child are not capable of specification; each case must be decided on its own facts and circumstances. Aschauer, 93 Wn.2d at 695.

Social worker Nelson testified that termination was in the children's best interest. During nearly two years of dependency, the mother had not remedied her parenting deficiencies such that she could move to unsupervised visits with her children. Further, she had not completed any of the services ordered by the court, such as mental health therapy, a relapse awareness program, or parenting classes. Meanwhile, the children were in a safe, stable home with their foster parents. The Guardian ad Litem reported that in the current foster home,

> [t]he children have integrated well with this family and both children are supported and doing well. [D.R.N.] has matured and his behaviors have improved. Both children have negative behaviors and reactions surrounding visitation and contact with the mother. This might be due to the mother's inconsistent visitation and the uncertainty this creates in the children.

The Guardian ad Litem recommended that "[t]he children should be made legally free for adoption as this is in the child's best interests." Substantial evidence supports the trial court's finding that it is in the best interest of D.R.N. and D.A.N. to terminate the parent-child relationship.

We affirm.

We concur: