166 P.3d 802 (2007)
In re the Interest of S.G.
State of Washington, Department of Social and Health Services, Respondent,
v.
Hector Gallardo-Cruz, Appellant.
No. 25468-2-III.
Court of Appeals of Washington, Division 3.
August 30, 2007.
*803 Lila Jane Silverstein, Washington Appellate Project, Seattle, WA, for Appellant.
Eugene Graff, WA Attorney General's Office, Vancouver, WA, for Respondent.
SWEENEY, C.J.
¶ 1 The termination of parental rights is a two step process. First, the State must show that a parent is deficient based on specific statutory criteria. Then, having proved parental deficiency, the State must show that termination is in the best interests of the child. Here, the State required that the dependant child's father participate in services to address parental deficiencies without first proving any deficiencies. We reverse the judgment terminating the father's parental rights.

FACTS
¶ 2 S.G. was born to Angela Rocha and Hector Gallardo-Cruz on June 10, 1998, in San Diego, California. Mr. Gallardo-Cruz is a citizen of Mexico. But he lived much of his life in San Diego as an undocumented resident. S.G.'s parents separated when she was five months old. Ms. Rocha moved with S.G. to Moses Lake, Washington. Ms. Rocha never took S.G. back to California. Mr. Gallardo-Cruz called S.G. on the phone once or twice each month and traveled to Washington once for a visit. He did not pay formal child support but occasionally gave Ms. Rocha cash payments for support.
¶ 3 On April 7, 2005, the Washington State Department of Child and Family Services (DCFS) received a referral. The referral alleged that Ms. Rocha had a severe chronic drug problem that caused her to neglect S.G. and her other children. The allegations were that Ms. Rocha did not provide for S.G.'s medical, financial, emotional, and other needs, and that S.G. suffered from physical abuse in her mother's care. The State placed S.G. in protective custody on April 11, 2005.
¶ 4 DCFS petitioned for a declaration of dependency, and the matter proceeded to a hearing on June 21, 2005. The court concluded *804 that S.G. was dependent. A disposition hearing followed. The court ordered Ms. Rocha to participate in several services, including drug and alcohol evaluations, and follow-up treatment. And the court ordered random urinalysis tests (UAs) for drug screening purposes. The State published notice of the dependency hearing in The San Diego Business Journal and the Quincy Valley Post-Register. Mr. Gallardo-Cruz did not appear. He told the court that he thought the dependency was only for Ms. Rocha.
¶ 5 The court entered a default order against Mr. Gallardo-Cruz on August 30, 2005. The court also applied "[t]he provisions of the fact finding and disposition orders entered on June 21, 2005" to the father. Ex. 9 at 3. The court ordered that Ms. Rocha and Mr. Gallardo-Cruz:
 not use illegal or non-prescribed mind-altering substances;
 maintain a safe and stable home for a period of at least six months before unsupervised visits or return of the child is considered;
 provide information as to his or her whereabouts and as to person(s) residing in or frequenting the home (people over 16 years old were required to submit to a criminal history and background check);
 sign any needed releases of information every 90 days so the State could assess progress and research the ability to safely parent;
 not participate in any illegal activity;
 actively participate in visitation;
 participate in DCFS approved parenting plan; and
 comply with providing random UAs for drug screening purposes.
Ex. 8 at 6.
¶ 6 The State informed Mr. Gallardo-Cruz of these requirements through an Individual Service and Safety Plan (ISSP). He received the ISSP on August 19, 2005. Mr. Gallardo-Cruz told S.G.'s case worker and her guardian ad litem that he wanted his daughter to live with him in San Diego. He has a new wife and stepdaughter with whom he has lived for three and one-half years. His brother and father also live in San Diego.
¶ 7 In 1997, Mr. Gallardo-Cruz was convicted in Washington for possession of cocaine with the intent to distribute. He has not committed any crime since that time. He also has not consumed drugs or alcohol in five years. The State, nonetheless, required Mr. Gallardo-Cruz to avail himself of the same services it required of Ms. Rocha. So he found a program in California and participated in drug and alcohol rehabilitation at his own expense. Mr. Gallardo-Cruz submitted to UAs on five different occasions; all were negative for alcohol and drugs.
¶ 8 DCFS petitioned to terminate the rights of both parents on February 9, 2006. The termination proceeded to hearing on July 7, 2006. Ms. Rocha was not present or represented. Mr. Gallardo-Cruz attended by phone and was represented by his attorney.
¶ 9 DCFS had sent a request through interstate compact asking California's social service agency in May 2006 to perform an assessment of Mr. Gallardo-Cruz's home. The idea was that any concerns coming out of the home study would have to be addressed before S.G. could be placed with her father. The home study had not been performed at the time of the termination hearing.
¶ 10 Mr. Gallardo-Cruz did not visit his daughter or request telephone contact with her during the dependency. He believed that he could not contact his daughter until he completed the required services. A state social worker testified in response to a question about Mr. Gallardo-Cruz's parental deficiencies: "Well, I have not received any reports that indicate . . . his ability to parent. And as far as his drug alcohol abuse, I have no information whether he has a current problem." Report of Proceedings (RP) at 143.
¶ 11 The social worker nevertheless insisted that Mr. Gallardo-Cruz would have to complete a drug and alcohol treatment program before he could gain custody of his daughter. The social worker surmised that reunification with the father would take at *805 least one year, because the "father would need to complete his court ordered services and he would have to initiate a visitation schedule as well." RP at 150-51. The social worker recommended termination because it would cause anxiety for S.G. to wait one year for her father to complete the drug and alcohol services that had been tailored to Ms. Rocha.
¶ 12 The trial court concluded that "[a]s to the father, there are no specific parental deficiencies currently evidenced." Clerk's Papers (CP) at 15; RP at 295. The court ordered that the parent-child relationship be terminated. Mr. Gallardo-Cruz appeals.

DISCUSSION
¶ 13 We review a trial judge's findings for substantial evidence. In re Welfare of C.B., 134 Wash.App. 942, 952-53, 143 P.3d 846 (2006). The court's findings must support the court's conclusions. State v. Wentz, 110 Wash.App. 70, 72-73, 38 P.3d 393 (2002) (citing State v. Macon, 128 Wash.2d 784, 799, 911 P.2d 1004 (1996)), aff'd, 149 Wash.2d 342, 68 P.3d 282 (2003). Here, the relevant conclusions are that the requirements for termination have been met, and that Mr. Gallardo-Cruz's parent-child relationship with his daughter should be terminated.
¶ 14 A proceeding to terminate parental rights requires the court to balance a parent's fundamental liberty interest in the care and custody of his or her children against the State's obligation to protect the basic safety and health of the children. C.B., 134 Wash.App. at 951, 143 P.3d 846. The analysis is a two step process. The first step focuses on the adequacy of the parents. C.B., 134 Wash.App. at 952, 143 P.3d 846; In re Dependency of H.W., 92 Wash.App. 420, 425, 961 P.2d 963, 969 P.2d 1082 (1998); RCW 13.34.190(1)(a). The second step focuses on the child's best interests. C.B., 134 Wash.App. at 952, 143 P.3d 846.
¶ 15 The State's decision to terminate parental rights must be predicated upon current parental deficiencies. RCW 13.34.180(1); In re Dependency of T.R., 108 Wash.App. 149, 154, 29 P.3d 1275 (2001). The State must prove the six factors:
(a) That the child has been found to be a dependant child;
(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . .; and
(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.
RCW 13.34.180(1).
¶ 16 The court has already concluded that S.G. is dependent (because of the mother's unfitness and by default as to the father). The court has already entered a dispositional order. S.G. had been removed from the custody of a parent for a period of at least six months at the time of the hearing. Here, the dispute is over factors (d), (e), and (f).
Services Offered RCW 13.34.180(1)(d)
¶ 17 Mr. Gallardo-Cruz first notes that the court concluded that he did not have any parental deficiencies. He argues, then, that it was impossible for services to correct a problem because no problem was found.
¶ 18 The trial court specifically found that, "[a]s to the father, there are no specific parental deficiencies currently evidenced." CP at 15. The availability of rehabilitative services is irrelevant to a parent who has not been found to have parental deficiencies. This statutory factor assumes that such a finding has already been made prior to the hearing for termination and for *806 good reason-the parental rights of a fit parent cannot be terminated. In re A.W., 53 Wash.App. 22, 29, 765 P.2d 307 (1988).
¶ 19 The court must first conclude that the parent is deficient before it can terminate the parent's legal relationship with his child. Id. Mr. Gallardo-Cruz argues that the necessary services were not offered. And we agree. But the more basic problem is that it is impossible to evaluate the sufficiency or efficacy of services as to Mr. Gallardo-Cruz when, at this point, the State failed to show he required any. Without a problem, there can be no solution.
Conditions Will Be Remedied RCW 13.34.180(1)(e)
¶ 20 Again, there has been no determination of conditions that need to be remedied. So it is not possible for the court to decide the likelihood that they will be remedied.
¶ 21 The State submits that services are required to determine problems. Essentially, Mr. Gallardo-Cruz must complete drug and alcohol rehabilitation in order to determine whether he has a drug or alcohol problem. This perspective is neither reasonable nor supported by law. In re Dependency of T.L.G., 126 Wash.App. 181, 198, 108 P.3d 156 (2005). A parent cannot be denied his right to parent his child on the off-chance that he may have a problem unknown to the State.
Continuation of the Parent-Child Relationship Diminishes Child's Prospect for a Stable and Permanent Home RCW 13.34.180(1)(f)
¶ 22 Mr. Gallardo-Cruz is S.G.'s father. He wants to take her into his home. He argues that she will have a stepmother and a stepsister, as well as extended family. We find neither a finding nor evidence to support a finding that Mr. Gallardo-Cruz's home is not a stable and permanent home for S.G. Again, the only impediment to Mr. Gallardo-Cruz taking custody of his daughter is the State's insistence that he fulfill the services demanded of S.G.'s mother, Ms. Rocha. As discussed above, he should not have to do that until his deficiencies as a parent have been shown.
¶ 23 The State argues that because the default order required that the provisions of the fact finding and disposition orders apply to the father by default, it is relieved of the burden of proving Mr. Gallardo-Cruz's deficiencies at termination. We disagree.
¶ 24 The court must evaluate the claimed parental deficiencies at every hearing through the dependency and at termination. A.W., 53 Wash.App. at 28, 765 P.2d 307. A termination petition should be filed only when it has been shown that the efforts to cure parental deficiencies have been unsuccessful and additional services will not remedy those deficiencies in the foreseeable future. Id. Here, parental deficiencies were never determined in the first place. The court concluded there were no deficiencies.
¶ 25 The findings here do not support the legal conclusion of termination. Id.
¶ 26 The State must establish parental deficiencies before it discusses whether termination is in the child's best interests. C.B., 134 Wash.App. at 952, 143 P.3d 846. Here, the primary problem is that the State did not establish those statutory factors, and therefore we need not reach the question of whether the child's best interests are served by termination. Id. (citing T.L.G., 126 Wash. App. at 197, 108 P.3d 156); RCW 13.34.190(2).
¶ 27 We reverse the judgment terminating Mr. Gallardo-Cruz's parental rights.
WE CONCUR: SCHULTHEIS and BROWN, JJ.