# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

In the Matter of the Dependency of

T.S., DOB 01/28/13, and
T.T.M., DOB 11/14/08,

           Minor Children.

_____

WASHINGTON STATE DEPARTMENT
OF SOCIAL & HEALTH SERVICES,

           Respondent,

           v.

WILLIE L. MATHEWS,

           Appellant.

_____

No. 72928-4-I
consolidated with
No. 72929-2-1

UNPUBLISHED OPINION

FILED: July 20, 2015

VERELLEN, A.C.J. — Willie Mathews appeals the termination of her parental rights
to her two children. She contends that the order terminating her parent-child
relationships must be reversed because the Department of Social and Health Services
(Department) failed to prove several statutory factors by clear, cogent, and convincing
evidence. Substantial evidence supports the trial court's explicit and implicit findings
that the Department offered or provided all necessary services capable of correcting her
parental deficiencies within the foreseeable future, that she was currently unfit to parent,

and that there was little likelihood that her parental deficiencies would be remedied in the near future. We affirm the termination order.

## FACTS

Ms. Mathews is the mother of T.M., a daughter born on November 14, 2008, and T.S., a son born on January 28, 2013. Ms. Mathews came to the attention of the Department when she sought prenatal care late in her pregnancy and tested positive for opiates and cocaine. At that time, Ms. Mathews acknowledged she suffered from severe depression and admitted to using alcohol when depressed. When T.S. was born, he tested positive for cocaine and required additional medical care and observation after delivery. Ms. Mathews was living in a shelter at the time, but was asked to move out shortly after the birth.

After a contested hearing in April 2013, the juvenile court found both children to be dependent as to Ms. Mathews. Ms. Mathews did not appear at the dependency fact-finding hearing. In determining dependency, the court found that Ms. Mathews has a history of substance abuse and depression. The dependency order required Ms. Mathews to participate in individual mental health counseling, to complete a drug and alcohol evaluation and follow treatment recommendations, and to participate in random urinalysis three times per week.

When the hospital discharged T.S., the Department placed him and four-year-old T.M. in the care of a paternal aunt. Dependency review hearings and permanency planning hearings took place in July 2013, December 2013, May 2014, and October 2014. Ms. Mathews did not appear at any of the hearings. After each hearing, the court found that the Department had made reasonable efforts to provide services, but the

2

mother had not engaged in any court-ordered services. The court also found that Ms. Mathews had not regularly visited the children.

In July 2014, the Department filed a petition to terminate the parental rights of both parents. On November 26, 2014, both parents attended a hearing on the petition and signed documents of consent to relinquish parental rights and open adoption agreements. A few days later, Ms. Mathews contacted her attorney and revoked her consent. The Department's petition proceeded to trial on December 5, 2014.[1] Ms. Mathews was represented by counsel, but did not personally attend the trial.

At trial, the court considered the testimony of the court appointed special advocate (CASA) and the social worker assigned to the case, as well as numerous exhibits.[2] The CASA testified that she visited the children every month beginning in April 2013. The CASA reported that T.S. had never lived with his mother and that T.M. only lived with her intermittently before she was removed in early 2013.

The CASA testified that she had had no opportunity to observe the children with Ms. Mathews. The CASA explained that she had no way of contacting Ms. Mathews because Ms. Mathews did not have an address or a working telephone number, so the

---

[1] Ms. Mathews told her attorney that the father also wished to revoke his previous consent to relinquish his parental rights. The State therefore presented evidence in support of the termination of the rights of both parents, and the court's order terminated the rights of both parents. Only Ms. Mathews is a party to this appeal and therefore, only the termination of her parental rights is at issue.

[2] The documentary evidence included the order of dependency, review hearing orders, and court documents establishing Ms. Mathews' numerous prior convictions, predominately for charges of theft and possession of stolen property.

CASA tried to contact her through the social worker, her attorney, and relatives with whom Ms. Mathews sporadically remained in contact.

The CASA reported that she spoke once to Ms. Mathews by telephone when Ms. Mathews called her about four months before the termination trial. Although Ms. Matthews' words were slurred and she was difficult to understand, the CASA said Ms. Mathews was distressed about losing custody of her children. The CASA urged Ms. Mathews to start participating in the services ordered by the court. The CASA provided the mother with the social worker's name and telephone number and her attorney's telephone number.

The CASA testified that Ms. Mathews had not obtained a drug and alcohol evaluation. The CASA recommended termination of the mother's parental rights because she had made no effort to engage in court-ordered services to address her parental deficiencies, she had seldom visited the children, had no home, and the children had been dependent for nearly two years. In the CASA's opinion, termination of the parental relationship was in the best interests of the children.

The social worker assigned to the case for the duration of the dependency also testified that she was unable to contact Ms. Mathews after she left the shelter shortly after T.S.'s birth. The social worker had no physical address, e-mail address, or valid telephone number for Ms. Mathews and, like the CASA, tried to contact her through relatives. The social worker said that although she referred Ms. Mathews for services, Ms. Mathews did not participate in any services, nor did she obtain a drug and alcohol evaluation.

In May 2014, the social worker learned that Ms. Mathews was in jail, and she visited her there just before her release. At that time, the social worker delivered a letter to Ms. Mathews informing her of an upcoming dependency review hearing and outlining the services ordered by the dependency court. The letter asked Ms. Mathews to contact the social worker upon her release and provided that "At that time, I can refer you for services."[3] The letter included the social worker's name and contact information.

The mother initiated telephone contact with the social worker twice: once before the dependency was established in March 2013 and then not again until several months after the jail visit in the summer of 2014. During the latter conversation, Ms. Mathews acknowledged her deficiencies and appeared to understand the services she was required to engage in. She stated her intent to become involved in those services. The social worker made referrals for Ms. Mathews to obtain the required services, but Ms. Mathews never attempted to obtain any services, nor did she attend any dependency court hearings, or request any information about the children.

The social worker said the children's caretaker was initially authorized to supervise visitation, but the visits rarely occurred. At some point, the Department began requiring professionally supervised visitation, but Ms. Mathews never showed up for any supervised visits, nor did she request any official visits with the children.

The social worker testified that she filed the termination petition on behalf of the Department because she did not know where Ms. Mathews was, she had no reason to believe that Ms. Mathews had made any effort to the address the issues that led to the dependency, and that there was little likelihood the children could be returned to

---

[3] Ex. 20.

Ms. Mathews' care in the near future. The social worker identified Ms. Mathews' parental deficiencies as significant mental health issues, long-standing drug and alcohol addiction, and a lack of parenting skills. The social worker explained that T.S. has "very, very high medical needs"[4] and expressed the opinion that Ms. Mathews was unable to meet those needs because she had not demonstrated an ability to remain sober, to recognize and meet the needs of the children, or to make herself available to parent them. The social worker estimated that it would take at least six months, or more likely a year, of consistently engaging in services to make sufficient progress in order to attempt reunification. According to the social worker, the children's caregiver, the paternal aunt, wanted to adopt the children, and continued dependency for six months to a year would diminish the children's prospects for permanency and integration into a stable and permanent home. The social worker also recommended termination as being in the best interests of the children "[b]ecause it would allow them the opportunity to be adopted and have permanency and stability."[5]

After the Department presented its case, counsel for Ms. Mathews asked the court to deny the petition, or alternatively, to continue the trial for six months to allow her to obtain services. The trial court issued an oral ruling and also entered written findings of fact and conclusions of law terminating the parental rights of Ms. Mathews and the father as to both children. In ordering termination, the court found that the Department offered services, but since the parents never attempted to engage in any services, there was no reasonable basis to conclude that they would do anything differently if the court

---

[4] Report of Proceedings (RP) (Dec. 5, 2014) at 107.
[5] Id. at 112.

6

continued the trial. The court also found that all elements of RCW 13.34.180 had been established by clear, cogent, and convincing evidence. Finally, the court found that Ms. Mathews was unfit to parent and that termination was in the children's best interests. Ms. Mathews appeals.

## ANALYSIS

Ms. Mathews contends that the Department failed to prove that it expressly and understandably offered all necessary services capable of correcting her parental deficiencies, that there was little likelihood conditions could be remedied in the near future, and that she was currently unfit to parent. Ms. Mathews further contends that the juvenile court's findings are insufficient and do not support the conclusions of law.

Parental rights are a fundamental liberty interest protected by the United States Constitution.[6] To terminate parental rights, the State must satisfy a two-step test.[7] First, it must prove the following statutory elements by clear, cogent, and convincing evidence:

(a)     That the child has been found to be a dependent child;

(b)     That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c)     That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d)     That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

---

[6] Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

[7] In the Matter of Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010).

(e)    That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . .

(f)    That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.[8]

If the trial court finds that the State has met its burden under RCW 13.34.180, it may terminate parental rights if it also finds by a preponderance of the evidence that termination is in the "best interests" of the child.[9]

Where the trial court has weighed the evidence, appellate review is limited to determining whether the court's findings of fact are supported by substantial evidence and whether those findings support the court's conclusions of law.[10] "Evidence is substantial if it is sufficient to persuade a fair-minded person of the truth of the declared premise."[11] When deciding whether substantial evidence supports the findings of fact, the appellate court must consider "'the degree of proof required.'"[12] Since the burden of proof for termination proceedings is clear, cogent, and convincing evidence, "the question on appeal is whether there is substantial evidence to support the findings in light of the highly probable test."[13] Unchallenged findings are verities on appeal.[14]

---

[8] RCW 13.34.180(1).

[9] RCW 13.34.190(b).

[10] In re Dependency of P.D., 58 Wn. App. 18, 25, 792 P.2d 159 (1990).

[11] In re Welfare of S.J., 162 Wn. App. 873, 881, 256 P.3d 470 (2011).

[12] In re Dependency of A.M.M., 182 Wn. App. 776, 785-86, 332 P.3d 500 (2014) (quoting P.D., 58 Wn. App. at 25).

[13] P.D., 58 Wn. App. at 25.

[14] In the Matter of Interest of Mahaney, 146 Wn.2d 878, 895, 51 P.3d 776 (2002).

In its oral ruling, the court noted that "it's clear that services were offered and recognized but never followed through on" by the parents.[15] The court noted the parents' "persistent failure" to do "anything at all" during the dependency.[16] The court's written findings include the following:

> 2.8 There is little likelihood that conditions will be remedied so that the children can be returned to the parents in the near future because throughout the dependency the parents have demonstrated an unwillingness to participate in and/or successfully complete services offered to correct their parental deficiencies.
>
> . . . .
>
> 2.9 The Department has been ready and available to offer services to each parent. However, throughout the dependency the whereabouts of both parents had been mostly unknown. The parents have not maintained telephone contact with the Department and the Department did not have valid addresses or phone numbers to contact them.
>
> . . . .
>
> 2.14 Both parents have a long history of mental health issues, homelessness, arrests, criminal convictions, and substance abuse. The parents have not maintained contact with the Department nor have they requested visitation with the children with the exception of some visits by the father early in the dependency. The parents have essentially abandoned these children.[17]

### Services Offered

Ms. Mathews argues that the social worker's generic testimony that she made referrals so that Ms. Mathews could access services is insufficient to establish that the Department expressly and understandably offered or provided necessary services.

---

[15] RP (Dec. 5, 2014) at 132-33.

[16] Id. at 132.

[17] Clerk's Papers (CP) at 171-72.

Ms. Mathews further points out that while the social worker testified that she made no referral for individual counselling because Ms. Mathews could obtain that service without a referral, there is no evidence the social worker told Ms. Mathews this. And Ms. Mathews suggests that because witnesses mentioned lack of parenting skills and homelessness as aspects of her unfitness, the Department should have offered additional services which would have been helpful, such as parenting skills training and housing assistance.

But the suggestion that the Department failed to meet its burden because "no one explained to [Ms. Mathews] how to access [services]"[18] and because the services offered were not sufficiently comprehensive simply ignores key facts established by the evidence. There is no dispute that Ms. Mathews had notice of the dependency order and that she understood that the order required her to engage in services in order to regain custody. There is also ample evidence that although Ms. Mathews was unreachable, the social worker was ready and able to assist her in complying with the court order. The social worker expressly testified that she did make service referrals to Ms. Mathews. When the social worker was able to reach Ms. Mathews in jail, she gave her a letter requesting that she contact the social worker when she was released so the social worker could provide referrals for services. Ms. Mathews does not challenge the court's finding that the Department was ready and available to provide services to her.

The testimony established that Ms. Mathews knew how to contact the social worker. Both the CASA and the social worker explained to Ms. Mathews that the social

---

[18] Reply Br. at 2.

worker could help her access services. But Ms. Mathews never took any steps to access services, nor made any inquiry about them. The trial court was not compelled to accept her statements a year and a half after the children had been removed from her care that she intended to participate. Ms. Mathews claims there is no evidence that she refused or rejected any service offered to her. But the evidence that she chose not to contact those willing to help her access and participate in services supports the court's finding that she "demonstrated an unwillingness to participate in any services."[19] Where, as here, the Department offers services "but the parent refuses to participate, RCW 13.34.180(1)(d) is satisfied."[20]

### Current Unfitness and Likelihood of Remedying Conditions

Ms. Mathews also challenges the court's findings that she is currently unfit to parent and that there is little likelihood that conditions can be remedied in the near future.[21] To meet its burden to prove current unfitness in a termination proceeding, the Department must prove that the parent's deficiencies prevent the parent from providing the child with "basic nurture, health, or safety."[22] And the focus of RCW 13.34.180(e) is whether the identified deficiencies have been corrected.[23] "A parent's failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order shall give rise to a rebuttable presumption that there is little likelihood

---

[19] CP at 171.

[20] In re Welfare of M.R.H., 145 Wn. App. 10, 26, 188 P.3d 510 (2008).

[21] See RCW 13.34.180(1)(e); In re Dependency of K.R., 128 Wn.2d 129, 142, 904 P.2d 1132 (1995).

[22] In re Welfare of A.B., 181 Wn. App. 45, 61, 323 P.3d 1062 (2014).

[23] In re Welfare of M.R.H., 145 Wn. App. 10, 25, 188 P.3d 510 (2008).

that conditions will be remedied so that the child can be returned to the parent in the near future."[24] "A parent's unwillingness to avail herself of remedial services within a reasonable period is highly relevant to a trial court's determination as to whether the Department has satisfied RCW 13.34.180(1)(e)."[25] Even if evidence shows the parent may eventually be capable of correcting their deficiencies, termination is still appropriate where the correction will not likely occur within the foreseeable future.[26]

Ms. Mathews contends that the finding of parental unfitness is supported only by facts established for purposes of dependency under a preponderance of the evidence standard and by inadmissible hearsay. She also claims that mere absence or the failure to engage in court-ordered services is, as a matter of law, insufficient to establish parental unfitness. Ms. Mathews maintains that without an adequately supported finding of parental deficiency, the court's finding on the likelihood of remedying such deficiency necessarily fails.

Termination and dependency proceedings have "different objectives, statutory requirements, and safeguards."[27] And while identification of parental deficiencies is sufficient to support a dependency, a court may not permanently terminate a parent's rights without a finding of current parental unfitness.[28] Here, the juvenile court did not merely rely on the dependency court's prior determination of parental deficiencies. As required, the court found current parental unfitness before terminating Ms. Mathews'

---

[24] RCW 13.34.180(1)(e).

[25] In re Welfare of T.B., 150 Wn. App. 599, 608, 209 P.3d 497 (2009).

[26] In re Welfare of A.G., 155 Wn. App. 578, 590, 229 P.3d 935 (2010).

[27] In re Welfare of K.K., 119 Wn.2d 600, 609, 836 P.2d 200 (1992).

[28] A.B., 181 Wn. App. at 60-61.

rights. This finding is not constitutionally infirm because it is based, in part, upon facts underlying the dependency. In a termination proceeding, the Department is not required to re-prove these facts.[29]

Ms. Mathews makes the sweeping assertion that the court's finding of current unfitness is, for the most part, supported only by inadmissible hearsay. While the court admitted some testimony merely for the purpose of explaining the basis for the social worker's and the CASA's opinions, Ms. Mathews identifies only one aspect of the finding that is arguably unsupported by competent evidence in the record.

Specifically, Ms. Mathews points out that the court determined she was currently unfit based, in part, upon a history of mental health issues. At the termination trial, the social worker also identified mental health issues as one of Ms. Mathews' deficiencies. However, as Ms. Mathews observes, the social worker did not specifically describe any mental health condition, nor did she provide the basis for her opinion, or explain how that condition affected her parenting.

But even ignoring such general references to her mental health issues, the finding of parental unfitness was also based upon substance abuse and abandonment. Substantial evidence before the court supports the finding that Ms. Mathews had a substance abuse problem. Ms. Mathews tested positive for drugs while pregnant, and T.S. tested positive for drugs at birth. This was the primary issue that led to the dependency and was established by the dependency order and corroborated by admitted testimony. These facts did not have to be re-proved at the termination trial.

---

[29] K.R., 128 Wn.2d at 141.

According to the testimony and documentary evidence, following the birth, Ms. Mathews did not obtain a substance abuse evaluation or drug treatment.

The evidence also supports the court's finding that the parents "essentially abandoned" the children.[30] While parental unfitness, not abandonment, is the "ultimate inquiry required by due process for termination of the child-parent relationship, in all contexts," this does not mean that a parent's unavailability, infrequent contact with the child, or lack of a relationship are inconsequential facts in determining current ability to parent.[31] To the extent that Ms. Mathews suggests that mere absence or lack of progress in services alone does not prove parental unfitness, she overstates the case authority. In re Interest of S.G. is inapplicable because in that case, the court terminated parental rights, while at the same time, it expressly found there were no parental deficiencies.[32] Similarly, in In the Matter of Welfare of A.B., the court made no express finding as to whether the father was unfit and, in view of the court's inconsistent factual findings, a finding of unfitness could not be implied.[33]

Ms. Mathews claims that the only inference that may be drawn from the evidence is that she was unwilling to cooperate with the Department. However, there is undisputed evidence that the parents seldom visited the children and that the younger child, almost two years old at the time of trial, believed his parental aunt was his mother. The younger child had never been in Ms. Mathews' care, and Ms. Mathews had only

---

[30] CP at 172 (Finding of Fact 2.14).

[31] In re Adoption of McGee, 86 Wn. App. 471, 477, 937 P.2d 622 (1997).

[32] 140 Wn. App. 461, 468, 166 P.3d 802 (2007).

[33] 168 Wn.2d 908, 922, 232 P.3d 1104 (2010).

intermittently cared for the older child prior to February 2013. Ms. Mathews did not attend any court proceedings, nor did she provide any input regarding the children's needs and placement during the dependency. Under these circumstances, there is ample evidence that Ms. Mathews was unavailable and currently unfit to parent the children.

*Sufficiency of Findings*

Ms. Mathews claims that the court failed to make a finding as to one statutory factor and that there is no basis in the record for some factual findings supporting the court's conclusions.

According to Ms. Mathews, the termination order must be reversed because the court did not make an explicit written finding pursuant to RCW 13.34.180(1)(d) that the Department expressly and understandably offered or provided necessary and reasonably available services capable of correcting her parental deficiencies. But while the court did not enter a specific written finding addressing this statutory factor, it is apparent from the written and oral findings, including the oral finding that "it's clear that services were offered and recognized but never followed through on,"[34] that the court intended to find that the Department met its burden as to this factor.[35]

Finally, Ms. Mathews alleges that the court's findings contain few facts specific to her and, as in In re Dependency of C.R.B., the findings contain insufficient facts to

---

[34] RP (Dec. 5, 2014) at 132-33.

[35] See A.B., 168 Wn.2d at 921 (omitted finding may be implied where it is clear from the remaining findings and circumstances that the missing finding was "actually intended" by the court).

support the court's legal conclusions.[36]  But C.R.B. is not analogous.  There, the only evidence was the caseworker's testimony, which consisted of legal conclusions parroting the language of the statute.  The court's factual findings were merely legal conclusions, unsupported by any facts.[37]  Here, the court properly entered adequate factual findings and, as noted above, substantial evidence in the record supports those findings.  Those findings, in turn, support the court's legal conclusions.

We affirm.

WE CONCUR:

_Leach, J._

_Becker, J._

---

[36] 62 Wn. App. 608, 804 P.2d 1197 (1991).

[37] Id. at 618-19.