IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Welfare of | ) | |
| | ) | No. 33339-6-III |
| | ) | |
| | ) | |
| F.M.O., | ) | |
| | ) | |
| | ) | OPINION PUBLISHED |
| | ) | IN PART |

KORSMO, J. — The trial court terminated a mother's relationship with her son, citing four deficiencies that prevented her from parenting the child. Since the mother was given notice of only three of those deficiencies, we remand for the trial court to reconsider whether termination of the parent-child relationship is appropriate considering only the three deficiencies which the mother knew were at issue in the trial.

## FACTS

When S.O. gave birth to her son, F.M.O., both mother and child tested positive for methamphetamine. The Department of Social and Health Services (DSHS) immediately took custody of the child and started dependency proceedings. Her noted parental deficiencies included substance abuse as well as mental health and domestic violence histories.

Two years later a termination petition was filed. The petition referenced several services offered to S.O., but did not expressly identify her deficiencies as a parent. The father relinquished his rights to the child, while the mother's case proceeded to trial. The assistant attorney general (AAG) representing DSHS began his closing argument by focusing on three identified parental deficiencies that S.O. had refused to address—her mental health problems, drug dependency, and a history of domestic violence with the child's father. Report of Proceedings (RP) at 232. Noting that the mother was currently incarcerated in the county jail, the AAG turned to the then-newly enacted statutory factor of RCW 13.34.180(1)(f) addressing whether the incarcerated parent was capable of maintaining a meaningful role in the child's life. He argued that because S.O. had no prior relationship with the child and had never parented him, the current incarceration did not alter the status quo. RP at 236-37. The AAG summed up his argument by stating that the mother was an unfit parent and had not shown improvement since the child's birth, commenting that "her circumstances are even worse with her current incarceration." RP at 239.

Defense counsel's closing argument focused on S.O.'s poverty and her desire to parent her son. Counsel referenced incarceration several times in remarks, primarily in the context of explaining why the mother was unable to see the child since young children did not visit the Okanogan County Jail. At the conclusion of counsel's remarks, the trial judge asked about the status of the pending criminal case and was told it had not

2

been scheduled for trial since counsel had asked for an evaluation of her client pursuant to RCW 10.77.[1] The court took the termination case under advisement and scheduled a hearing three weeks later to render its judgment.

The trial court read its remarks into the record before S.O. The court determined that S.O. was currently unfit to parent and granted the petition. In the course of its remarks the court noted that S.O.'s recurring incarceration hampered her ability to find employment and maintain housing. Written findings were prepared by the AAG and ultimately adopted by the court. Critical to this appeal is a portion of finding of fact 2.13.1:

> [S.O's] primary current deficiencies that prevent the child from being safely placed with her are untreated mental illness, untreated substance abuse issues, a history of domestic violence in her relationships and periods of incarceration that inhibit her ability to parent.

Clerk's Papers at 31.

Counsel filed a notice of appeal on behalf of her client. S.O. filed a five page handwritten "appeal" at the same time. A panel of this court heard oral argument.

## ANALYSIS

S.O. presents two issues in this appeal. First, she contends she was not properly notified of the parental deficiencies that were at issue in the trial. Second, she contends

---

[1] "My concern in the criminal case based on criminal standards, things being very different here, I have filed a motion for an evaluation under 10—RCW 10.77." RP at 244-45.

her trial counsel rendered ineffective assistance by failing to ask for appointment of a guardian ad-litem due to her perceived incompetency. We address the two issues in the order stated.

Initially, we note the general standards governing review of a parental termination decision. The process largely is controlled by statute. Washington courts apply a two-step process when deciding whether to terminate a parent-child relationship. *In re Welfare of A.B.*, 168 Wn.2d 908, 911, 232 P.3d 1104 (2010). "The first step focuses on the adequacy of the parents" and requires DSHS to prove, by clear, cogent, and convincing evidence, the six termination factors set forth in RCW 13.34.180(1). *Id.* Clear, cogent, and convincing evidence means "highly probable." *In re Welfare of M.R.H.*, 145 Wn. App. 10, 24, 188 P.3d 510 (2008). Due process also requires the trial court find by clear, cogent, and convincing evidence that the parent is currently unfit. *In re A.B.*, 168 Wn.2d at 918. Where a trial court finds all of the elements of the statute by clear, cogent, and convincing evidence, it implicitly finds the parent is unfit by the same standard. *In re Dependency of K.N.J.*, 171 Wn.2d 568, 576-77, 257 P.3d 522 (2011). If DSHS meets its burden as to the six termination factors, "the trial court must find by a preponderance of the evidence that termination is in the best interests of the child." *In re M.R.H.*, 145 Wn. App. at 24. (citing RCW 13.34.190(2)). Only if the first step is satisfied may the court reach the second step. *A.B.*, 168 Wn.2d at 911.

*Notice of Alleged Parenting Deficiencies*

In her briefing, S.O. argues that only parental deficiencies alleged in the termination petition can be the basis for severing the parent-child relationship. We conclude that due process does not require specific allegations in the termination petition. Nonetheless, we do agree that the record does not reflect that S.O. knew she needed to address the issue of her recurring incarceration *as a parental deficiency.*

Due process is a flexible concept that may vary with the interests that are at stake, but at its heart are the concepts of notice and the ability to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313-14, 70 S. Ct. 652, 94 L. Ed. 865 (1950). Due process is violated if a parent is held accountable for a parenting deficiency about which she was never notified. *In re Dependency of A.M.M.*, 182 Wn. App. 776, 790, 332 P.3d 500 (2014).

Seeking to expand *A.M.M.*, S.O argues the termination petition must be the source of notice of all parental deficiencies. *A.M.M.* does not support her argument. There a mother faced a dependency proceeding, and subsequently a termination proceeding, due to her substance abuse problem. *Id.* at 783. A social worker testified during the termination trial that the mother was deficient because she lacked understanding of her children's developmental needs. *Id.* at 784. Defense counsel attacked the testimony, pointing out that no efforts had been made to offer services to address this deficiency, thus rendering the State's case inadequate. *Id.* However, the trial court determined that

both the substance abuse problem and the mother's ignorance of "her children's developmental needs constituted a parental deficiency." *Id.* at 792.

On appeal, this court reversed the termination order because the mother was not notified that her knowledge concerning child development would be considered as a basis for terminating her parental rights. *Id.* at 790. Concluding that due process required notice of the basis for a termination proceeding, the court looked to the record and could discern no notice to the mother. *Id.* at 791-92. In the course of its record review, this court commented that neither the dependency nor the termination petitions discussed the issue, and "there is no evidence in the record that [mother] was ever informed that she could lose her parental rights if she did not adequately familiarize herself with her children's developmental needs." *Id.* at 792.

Thus, while the *A.M.M.* court looked at the two petitions, that court did not limit itself to those documents. Indeed, if the *termination* petition needed to contain the allegation, as S.O. argues, then the *A.M.M.* court should not even have looked to the dependency petition for notice. However, it did look to both the dependency case and the entire termination case record before concluding the mother had not been given notice of the new parental deficiency that arose during trial testimony. *A.M.M.* does not support S.O.'s argument that the termination petition must include each parental deficiency that DSHS is seeking to prove.

Nonetheless, due process requires that DSHS provide notice to a parent before terminating the parent's legal relationship with the child. Typically that action takes place during the dependency process where evaluations determine the needs of the children, the parent's ability to meet those needs, and what services can be provided to assist the parent in meeting the children's needs. Only when the dependency fails to help the parent overcome the deficiencies does the case proceed to a termination hearing. Often the adequacy of the services offered, or the parent's response to the services, is the primary question during the termination hearing.

Both sides need to know what deficiencies are at issue since the State has to prove the deficiencies to make its case while the parent has to know what allegations to defend against. But in most instances the termination is the endgame in lengthy proceedings where the parties have wrestled over the needed services during the previous years and there is no question what deficiencies are truly at issue. In most instances they have already been the subject of repeated evaluations and earlier court proceedings.[2] Thus, it serves only form instead of substance to rigidly require notice be provided in the termination petition itself. Accordingly, we decline S.O.'s request to mandate that

---

[2] As noted by the mother's counsel in *A.M.M.*, the State's failure to offer services related to the deficiency it is seeking to prove will lead to rejection of the claim. This gives DSHS great incentive to notify a parent of the perceived deficiency and address it; there is no benefit to raising a new deficiency late in the proceedings.

parental deficiencies be specified in the termination petition.[3] Although notice must be provided, it need not necessarily be provided in the termination petition.[4]

Our rejection of this argument does not resolve the issue on appeal. S.O. correctly contends that she was never notified her recurring incarceration was itself a parenting deficiency that she needed to defend against. This is probably because the State never sought to use it as a deficiency.[5] The topic of incarceration first came up at trial during the argument of the parties when the fact of her incarceration was used to address a statutory factor and to explain the lack of visitation. It was the trial judge, in his prepared remarks, that included incarceration in the list of proven deficiencies. Those remarks were then incorporated into the written findings, leaving no doubt that the court considered incarceration as a deficiency rather than as a mere evidentiary fact. This was error.

---

[3] Washington is a notice pleading state and does not require a petitioner do more than state "a short and plain statement" of the party's entitlement to relief along with a request for appropriate judgment. CR 8(a). There are methods of challenging an inadequate pleading. *E.g.*, CR 12(b)(6); CR 12(c). A party also can always ask that a pleading be made more definite. CR 12(e). All of these suggest that no special pleading rule is needed for a termination petition.

[4] We can envision instances where a new deficiency might develop after a petition is filed and occur at a time when the petition could no longer be amended. No purpose would be served in precluding the trial court from considering a new issue bearing on parental fitness, provided that timely notice was given to the parent.

[5] Query what type of services would be necessary for DSHS to provide if it had sought to address a "recurring incarceration" parental deficiency.

*A.M.M.* also is clear on the remedy here. In the absence of evidence in the record that the other deficiencies proven at trial, without regard to the invalid factor, justified termination of the parental rights, remand to the trial court is in order. 182 Wn. App. at 792. As there, we "remand with instructions for the trial court to consider whether termination is appropriate on the basis of the parental deficiencies of which [the mother] was given adequate notice." *Id.* at 792-93. The trial court is required to strike the finding regarding the recurring incarceration. *Id.* at 793.

A majority of the panel having determined that only the forgoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

*Competency of S.O.*

S.O. also argues that her counsel provided ineffective service by failing to seek appointment of a guardian ad litem once the attorney questioned her competency. The record does not allow resolution of this claim.

When a parent is mentally incompetent, the superior court must appoint a guardian ad litem to protect the parent's interests. RCW 4.08.060; *In re Welfare of Dill*, 60 Wn.2d 148, 150, 372 P.2d 541 (1962). A trial court is free to appoint a guardian ad litem on its own motion. *Graham v. Graham*, 40 Wn.2d 64, 67, 240 P.2d 564 (1952). When an attorney knows about the parent's incapacity, it is "incumbent" to request appointment of

a guardian ad litem. *Dill*, 60 Wn.2d at 150. Given trial counsel's request for an evaluation under RCW 10.77 in the criminal case, S.O. contends counsel also was required to act in the termination case. Her argument assumes too much.

Both parties also assume this ineffective assistance claim is governed by the standards, applicable to the Sixth Amendment to the United States Constitution, found in *Strickland v. Washington*, 466 U.S. 668, 689-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Although we have suggested that *Strickland* is applicable to counsel appointed in termination cases, no case has squarely so held. *E.g.*, *In re Dependency of S.M.H.*, 128 Wn. App. 45, 61, 115 P.3d 990 (2005). Since the parties have presented no other standard, we will apply *Strickland* in this case without deciding whether it is applicable at all to termination actions.

Appellate courts must be highly deferential to trial counsel's decisions. *Strickland*, 466 U.S. at 689-91. A strategic or tactical decision is not a basis for finding error. *Id.* Under *Strickland*, courts apply a two-prong test: whether or not (1) counsel's performance failed to meet a standard of reasonableness and (2) actual prejudice resulted from counsel's failures. *Id.* at 690-92. When a claim can be disposed of on one ground, a reviewing court need not consider both *Strickland* prongs. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726, *review denied*, 162 Wn.2d 1007 (2007).

Although Washington courts can review a constitutional claim raised for the first time on appeal under RAP 2.5(a), there still must be a sufficient factual basis supporting

10

the claim in order for review to be undertaken. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). That is S.O.'s problem here—there is scant evidence that S.O. was incompetent to stand trial in the termination case. Everyone is presumed competent; incompetency must be established by clear and convincing evidence. *Binder v. Binder*, 50 Wn.2d 142, 148-49, 309 P.2d 1050 (1957).

S.O. has no such evidence. All she has is her counsel's reference to the fact that she sought an evaluation in the criminal case under RCW 10.77. That chapter of the criminal procedure code governs both insanity and incompetency to stand trial. *See, e.g.*, RCW 10.77.030; .050; .060(1)(a). The chapter also applies to evaluations conducted for a diminished capacity defense. *State v. Nuss*, 52 Wn. App. 735, 738-40, 763 P.2d 1249 (1988), *review denied*, 112 Wn.2d 1010 (1989). The reference to "RCW 10.77" does not necessarily support the argument that counsel believed her client to be incompetent in that case.[6]

Moreover, the ultimate question in a competency case is whether the party understands the nature of the proceedings. *State v. Ortiz*, 104 Wn.2d 479, 482, 706 P.2d 1069 (1985) (competency is ability of criminal defendant to understand the proceedings and assist in his own defense); *Graham*, 40 Wn.2d at 66-67 (guardian ad litem should be

---

[6] Since we reject S.O.'s argument, we do not address the State's contention that counsel made a tactical decision not to pursue incapacity in the termination case since it would tend to undercut S.O.'s desire to parent her child.

appointed in civil case when party cannot comprehend the significance of legal proceedings in terms of the best interests of the party). We believe it is entirely possible for a person to be competent in a civil case and not competent in a criminal case—or vice versa. Nothing indicates that S.O. did not understand the nature of the termination case. She testified in that action and was present throughout the trial and the verdict. She even penned a five page personal "appeal" challenging the action. In short, this record does not suggest that S.O. was incompetent to stand trial.

The record does not support the contention that counsel *knew*[7] her client was incompetent and performed ineffectively by failing to seek a guardian ad litem in the termination case.

We remand to the trial court for further proceedings.

_____
Korsmo, J.

WE CONCUR:

_____          _____
Fearing, C.J.                                              Siddoway, J.

---

[7] We note that an attorney who alleges a client is incompetent without first confirming the fact can be subject to attorney discipline. *In re Disciplinary Proceedings Against Eugster*, 166 Wn.2d 293, 322, 209 P.3d 435 (2009). Counsel cannot proceed "entirely upon his own subjective judgment." *Id.*