**FILED**
**JUNE 15, 2017**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Welfare of | ) | No. 34725-7-III |
| | ) | |
| | ) | |
| F.M.O. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

LAWRENCE-BERREY, A.C.J. — This is S.O.'s second appeal from the trial court's order terminating her parental rights to her son, F.M.O. In S.O.'s first appeal, this court held that S.O.'s due process rights were violated when the trial court found her recurring incarceration constituted a parental deficiency. *In re Welfare of F.M.O.*, 194 Wn. App. 226, 229, 374 P.3d 273 (2016) (published in part). This was because the Department of Social and Health Services (DSHS) never gave her notice that her recurring incarceration was a parental deficiency she needed to defend against at trial. *Id.* at 232. We, therefore, remanded for the trial court to reconsider whether termination of the parent-child relationship was appropriate considering only the deficiencies that S.O. knew were at issue in the trial. *Id.* at 227.

On remand, the trial court again terminated S.O.'s parental rights. S.O. appeals

again, raising five new issues—all of which she could have raised in her first appeal.

Three of the issues S.O. raises do not relate to the proceedings on remand, and we decline

to review them. Her other two arguments essentially challenge the sufficiency of the

evidence supporting the trial court's factual findings at the remand hearing. Because

substantial evidence supports these findings, we affirm the termination order.

## FACTS

In August 2012, F.M.O. was born with methamphetamine in his system. S.O. also

tested positive for methamphetamine.[1] DSHS immediately took custody of F.M.O. and

began dependency proceedings. S.O.'s noted parental deficiencies included her mental

health issues, her substance abuse issues, and her history of domestic violence with

F.M.O.'s father. After a two-year dependency, DSHS initiated termination proceedings.

In its termination petition, DSHS did not expressly allege any particular parental

deficiencies. During the termination trial, after both parties had concluded closing

arguments, the trial court asked about the status of S.O.'s pending criminal charges.

S.O.'s counsel indicated the pending criminal case had not been scheduled for trial, given

that counsel had requested that S.O. be evaluated pursuant to chapter 10.77 RCW. S.O.'s

---

[1] F.M.O.'s father voluntarily relinquished his parental rights.

counsel never requested that a guardian ad litem be appointed in the termination case.

The trial court granted DSHS's petition and terminated S.O.'s parental rights to F.M.O. In doing so, the court cited four parental deficiencies that prevented F.M.O. from being safely placed with her: (1) untreated mental illness, (2) untreated substance abuse issues, (3) a history of domestic violence in her relationships, and (4) periods of incarceration that inhibited her ability to parent.

S.O. appealed the termination order, raising two issues: (1) she did not receive constitutionally adequate notice of her parental deficiencies because the termination petition itself did not notify her of the deficiencies the court relied on, and (2) her trial counsel rendered ineffective assistance because she did not ask the court to appoint a guardian ad litem due to her perceived incompetency. *See F.M.O.*, 194 Wn. App. at 229.

With respect to S.O.'s first argument, we agreed in part and disagreed in part. We agreed that before a trial court relies on a parental deficiency as a basis for terminating parental rights, the parent must have notice that he or she needs to defend against that deficiency. *Id.* at 230. However, we rejected S.O.'s argument that the termination petition itself must allege each parental deficiency that DSHS seeks to prove. *Id.* Rather, we held that DSHS can give notice through other means, such as the dependency petition or through service providers' evaluations. *Id.* at 231-32.

3

Applying these rules, we concluded that DSHS notified S.O. of the first three parental deficiencies, but never notified her that her recurring incarceration was itself a parental deficiency she needed to defend against. *Id.* at 232. Accordingly, this court remanded the case for the trial court to strike the finding regarding S.O.'s recurring incarceration, and to reconsider whether termination was appropriate in light of the three parental deficiencies for which S.O. had adequate notice. *Id.* at 233.

With respect to S.O.'s second argument—that counsel rendered ineffective assistance by not seeking the appointment of a guardian ad litem—we concluded the record was insufficient to review S.O.'s claim. *F.M.O.*, No. 33339-6-III, slip op. at 9, 11 (Wash. Ct. App. May 24, 2016) (publish in part) http://www.courts.wa.gov/opinions/pdf/333396.pub.pdf. We reasoned that trial counsel's passing reference to chapter 10.77 RCW—which governs competency, insanity, and diminished capacity—was insufficient to establish that counsel *knew* S.O. was incompetent. *Id.* at 11-12. We noted the record indicated S.O. was actually competent in her termination case—she testified, was present throughout trial, and filed a five page "appeal" challenging the termination order. *Id.* at 12.

In August 2016, the trial court held a hearing in accordance with this court's instructions. DSHS argued that S.O.'s two primary parental deficiencies were her

4

untreated mental illness and untreated substance abuse issues, and that the rest of her ancillary deficiencies stemmed from these two underlying problems. DSHS further argued that S.O. failed to remedy these deficiencies and asked the court to again terminate her parental rights to F.M.O.

S.O.'s counsel agreed that the purpose of the remand hearing was for the court to consider whether termination was appropriate in light of the parental deficiencies for which S.O. had notice, and that the hearing was not for relitigating the termination trial. Counsel agreed to sign the new termination order as to form.

The trial court generally reaffirmed its prior findings. It found that S.O.'s "primary current deficiencies that prevent[ed] the child from being safely placed with her [were] untreated mental illness, untreated substance abuse issues, and a history of domestic violence in her relationships." Clerk's Papers (CP) at 5. The trial court concluded that in light of these deficiencies, termination of S.O.'s parental rights was appropriate. The trial court entered a new termination order that was substantively identical to the first one, but the court struck its prior finding that S.O.'s recurring incarceration constituted a parental deficiency. S.O. timely appealed from the new termination order.

No. 34725-7-III
*In re Welfare of F.M.O.*

ANALYSIS

A. LAW OF THE CASE DOCTRINE

In this second appeal, S.O. raises arguments she did not raise in her first appeal. She argues (1) the trial court erred when it relied on her history of domestic violence relationships as a basis for terminating her parental rights, (2) the trial court failed to make adequate written findings reflecting its consideration of the incarcerated parents' statute, (3) DSHS failed to show a connection between her mental illnesses and her inability to parent, (4) DSHS failed to offer or provide her all necessary services because it did not provide her services while she was incarcerated, and (5) DSHS failed to prove under RCW 13.34.180(1)(e) that little likelihood existed that conditions would be remedied so F.M.O. could be returned to her in the near future.[2]

S.O. could have raised all of these issues in her first appeal. A party generally may not raise issues in a second appeal that were or could have been raised in the first appeal. *State v. Sauve*, 100 Wn.2d 84, 87, 666 P.2d 894 (1983); *State v. Jacobsen*, 78 Wn.2d 491,

---

[2] In her first appeal, S.O. assigned error to the trial court's findings that DSHS offered or provided all necessary services under RCW 13.34.180(1)(d), and that little likelihood existed that conditions would be remedied in the near future under RCW 13.34.180(1)(e). *See* No. 33339-6-III, Br. of Appellant at 1-2; *F.M.O.*, 194 Wn. App. 226. However, she only assigned error to these findings to support her main contention that "the termination petition did not identify any alleged parental deficiencies." No. 33339-6-III, Br. of Appellant at 4.

6

493, 477 P.2d 1 (1970); *State v. Fort*, 190 Wn. App. 202, 233, 360 P.3d 820 (2015), *review denied*, 185 Wn.2d 1011, 368 P.3d 171 (2016); *State v. Mandanas*, 163 Wn. App. 712, 716, 262 P.3d 522 (2011); *State v. Corrado*, 94 Wn. App. 228, 236, 972 P.2d 515 (1999). This is so even when the issue is constitutional. *Fort*, 190 Wn. App. at 234; *Mandanas*, 163 Wn. App. at 717.

S.O. argues this court has discretion to review these issues under RAP 2.5(c)(1). This rule "provides for review where the trial court has exercised some discretion." *Mandanas*, 163 Wn. App. at 716 n.2. The rule provides:

> If a trial court decision is otherwise properly before the appellate court, the appellate court may at the instance of a party review and determine the propriety of a decision of the trial court even though a similar decision was not disputed in an earlier review of the same case.

RAP 2.5(c)(1). The condition that the trial court decision be "properly before the appellate court" refers in part to the requirement that a litigant properly preserve issues for appellate review. 2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 2.5 at 238 (8th ed. 2014).

Importantly, this rule "'does not revive automatically every issue or decision which was not raised in an earlier appeal. Only if the trial court, on remand, exercised its independent judgment, reviewed and ruled again on such issue does it become an appealable question.'" *State v. Wheeler*, 183 Wn.2d 71, 78, 349 P.3d 820 (2015)

7

(quoting *State v. Barberio*, 121 Wn.2d 48, 50, 846 P.2d 519 (1993)). Under this rule, a litigant may not raise new issues in a second appeal that were not reconsidered by the trial court upon remand. *See Wheeler*, 183 Wn.2d at 78; *Barberio*, 121 Wn.2d at 51 (refusing to allow Barberio to raise a new challenge to an affirmed exceptional sentence not reconsidered at resentencing); *State v. Bailey*, 35 Wn. App. 592, 594, 668 P.2d 1285 (1983); 2A TEGLAND, *supra*, at 238. When a litigant attempts to raise an issue not reconsidered below, an appellate court has no discretion to consider that issue. *See Wheeler*, 183 Wn.2d at 78.

Here, on remand, the trial court considered whether termination of the parent-child relationship was appropriate considering only the deficiencies that S.O. knew were at issue in the trial—her untreated mental health issues, her untreated substance abuse issues, and her history of domestic violence relationships. The trial court exercised its independent judgment and ruled again that these three deficiencies were a sufficient basis for finding S.O. unfit to parent. Thus, in this appeal, S.O. may only challenge the portions of the termination order relating to this decision.

S.O. raises three issues with associated arguments that have nothing to do with the trial court's exercise of independent judgment on remand. These arguments are: (1) the trial court failed to make adequate written findings relating to its consideration of the

incarcerated parents' statute, (2) DSHS failed to prove it offered or provided her all necessary services under RCW 13.34.180(1)(d) because it did not provide her services while she was incarcerated, and (3) DSHS failed to prove that conditions would not improve in the near future under RCW 13.34.180(1)(e). S.O. cannot now raise these issues for the first time.

However, S.O. raises two issues with associated arguments that are related to the trial court's exercise of independent judgment on remand. These arguments are: (1) her history of domestic violence relationships was an improper basis for terminating her parental rights, and (2) DSHS failed to prove a connection between her mental illness and her inability to parent. Although S.O. did not raise either of these issues at the remand hearing, they are essentially challenges to the sufficiency of the evidence supporting the trial court's renewed factual findings. *See In re Dependency of D.L.B.*, 186 Wn.2d 103, 123, 376 P.3d 1099 (2016). For this reason, we will consider these two issues. In reviewing the sufficiency of the evidence for both findings, we are mindful of the requirement that the clear, cogent, and convincing standard of proof required by RCW 13.34.190(1)(a)(i) is more substantial than in ordinary civil cases in which proof need only be by a preponderance. *Id.* at 116.

B.     S.O.'s HISTORY OF DOMESTIC VIOLENCE RELATIONSHIPS AS A PARENTAL
DEFICIENCY

S.O. argues that her history of domestic violence relationships was an improper basis for terminating her parental rights. Specifically, she argues the trial court impermissibly determined that her status as a domestic violence victim was a parental deficiency. She also argues F.M.O. never lived with her, so he never experienced any domestic violence trauma. Finally, she argues she was not in a domestic violence relationship at the time of the termination trial.

The controlling case on this issue is *D.L.B.*, 186 Wn.2d 103. In that case, the trial court terminated the mother's parental rights, and found in the termination order that: (1) the mother had a long-standing pattern of maintaining relationships with abusers, despite the risks that this posed for herself and her child; (2) before participating in domestic violence classes, she maintained two such relationships; (3) she misrepresented crucial aspects of these relationships to DSHS; (4) she currently lived with a man who had committed domestic violence assaults between 1988 and 2010; (5) she hid her relationship with this man from DSHS, even though she planned to move her child into his home; and (6) these facts damaged her credibility and indicated her inability to put into practice what was taught/discussed in her domestic violence programs. *Id.* at 124-25.

10

On appeal, the mother cited RCW 26.44.020(16) and argued that the risk that her child might be exposed to domestic violence was not a parental deficiency. *Id.* at 123. She also argued there was no evidence her current partner had perpetrated domestic violence against her. *Id.* at 124.

Our Supreme Court rejected the mother's arguments. *Id.* The court agreed that being a victim of domestic violence is not a parental deficiency. *Id.* However, the court concluded that the trial court never made a finding to that effect. *Id.* The court reasoned that "[n]othing in the trial court's conclusions amount[ed] to a ruling that domestic violence victimization is a parental deficiency." *Id.* at 125. The court further reasoned that the trial court's concerns about domestic violence reflected its reasonable doubt that the mother would protect her child from violence if she regained custody. *Id.* "Those doubts stemmed in significant part from credibility assessments that are the province of the trial court." *Id.*

The *D.L.B.* court then addressed the mother's argument that there was no evidence her current partner had perpetrated domestic violence against her. *Id.* The court characterized this argument as asking it to rule, as a matter of law, "that her current relationship could not sustain any concerns about domestic violence unless the

Department proved her boyfriend had perpetrated violence against [her]." *Id.* The court held that it would not restrict the trial court's discretion in this way. *Id.*

In this case, at the remand hearing, the trial court found that S.O.'s history of domestic violence in her relationships prevented F.M.O. from being safely placed with her. The court found that her failure to address this deficiency rendered her unfit to parent. Substantial evidence supports this finding.

The Child Protective Services (CPS) investigator testified that in 2006, CPS removed one of S.O.'s other children from her care because S.O. and the child's father both had warrants relating to domestic violence charges. He testified that in 2009, this child was again removed after S.O. failed to appear on domestic violence charges. He testified that in 2010, CPS investigated S.O. for neglect, and was concerned about domestic violence. He testified that based on his investigations of S.O. over the years, it was clear she was caught in a domestic violence cycle.

The CPS investigator further testified that domestic violence services, such as counseling and advocacy, can teach victims how to respond to domestic violence situations, how to remove themselves from these living situations, and how to protect their children from further violence. He testified that a child living in a home with domestic violence poses a risk of harm to the child. In light of S.O.'s history of domestic

12

violence relationships, DSHS recommended and the court ordered S.O. to participate in domestic violence services. S.O. never complied with these services.

Citing RCW 26.44.020(16), S.O. argues that the trial court impermissibly determined that her status as a domestic violence victim was a parental deficiency. However, as in *D.L.B.*, the trial court here never found that S.O.'s status as a victim of domestic violence was a parental deficiency. Rather, the trial court found that her history of domestic violence relationships "prevent[ed] the child from being safely placed with her." CP at 5. As in *D.L.B.*, this finding reflected the trial court's reasonable doubt that S.O. would protect F.M.O. from violence if she regained custody, given that she never participated in domestic violence services.

S.O. also argues that F.M.O. never directly experienced any domestic violence trauma, and that she was not in a domestic violence relationship at the time of the termination trial. Again, these arguments are inconsistent with our Supreme Court's decision in *D.L.B.*, which held that a trial court can reasonably be concerned about a mother's history of domestic violence relationships without proof that she was *currently* in one. *See D.L.B.*, 186 Wn.2d at 125. Likewise, here, the trial court was reasonably concerned about S.O.'s history of domestic violence relationships, given her history of having her other child removed for this reason, DSHS's recommendation for domestic

violence services, and S.O.'s failure to engage in those services. The trial court's concern was valid even though F.M.O. never directly experienced the domestic violence and S.O. was not in a domestic violence relationship at the time of the termination trial.

Accordingly, substantial evidence supports the trial court's factual findings that S.O.'s history of domestic violence relationships prevented F.M.O. from being safely placed with her, and her failure to address this deficiency rendered her unfit to parent.

C.     CONNECTION BETWEEN S.O.'S MENTAL ILLNESSES AND ABILITY TO PARENT

S.O. argues substantial evidence does not support the trial court's finding that her untreated mental illnesses constituted a parental deficiency. Specifically, she contends DSHS failed to show a connection between her mental illnesses and her ability to parent.

"[M]ental illness is not, in and of itself, proof that a parent is unfit or incapable." *In re Dependency of T.L.G.*, 126 Wn. App. 181, 203, 108 P.3d 156 (2005). "The court must examine the relationship between the mental condition and parenting ability." *Id.* "[C]hildren may not be removed from their homes merely because their parents are mentally ill." *Id.* However, individuals who suffer from mental illness may still have their parental rights terminated if they are unfit to parent. *Id.*; *In re Welfare of H.S.*, 94 Wn. App. 511, 528, 973 P.2d 474 (1999).

14

At the remand hearing, the trial court found that S.O. suffered from untreated mental illness, that her mental illness prevented F.M.O. from being safely placed with her, and that her mental illness rendered her unfit to parent. Substantial evidence supports this finding.

Shortly after F.M.O. was born, he was removed from S.O.'s care because he had methamphetamine in his system. At trial, the mental health professional testified that S.O. had been diagnosed with posttraumatic stress disorder, an impulse control disorder, and amphetamine dependence. The mental health professional testified she had recommended mental health services and chemical dependency treatment.

The CPS investigator testified that S.O.'s untreated mental illnesses impaired her ability to parent and protect her children. He testified that S.O. would be labile and very hostile at times, but would be calmer at other times. During one visit, S.O. became angry, which led to the visit being terminated and the police being called.

However, the same mental health professional who described S.O.'s diagnoses and recommended mental health services testified she could not determine if a correlation existed between S.O.'s illnesses and S.O.'s parenting abilities. Nevertheless, comparing the CPS investigator's clear opinion with the mental health professional's inconclusive opinion, the trial court was within its discretion to give greater weight to the

No. 34725-7-III
*In re Welfare of F.M.O.*

investigator's clear opinion. We determine that substantial evidence supports the trial court's finding that S.O.'s untreated mental illnesses prevented F.M.O. from being safely placed with S.O., and that S.O.'s failure to address this deficiency rendered her unfit to parent.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Siddoway, J.

Pennell, J.

16