FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 NOV 13 AM II: 34

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of<br>U.D.W.,<br>D.O.B. 09/15/2015,<br><br>          Minor child.<br><br>STATE OF WASHINGTON,<br>DEPARTMENT OF SOCIAL AND<br>HEALTH SERVICES,<br><br>          Respondent,<br><br>    v.<br><br>F.W.,<br>          Appellant. | No. 77991-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br>FILED: November 13, 2018 |

BECKER, J. — The trial court terminated the father's parental rights to his two-year-old son. As a basis for the termination, the court relied, in part, on the father's failure to address his anger. But the father was not notified during the dependency that inability to control his anger was itself a parental deficiency that he would be required to defend against during the termination proceeding. Accordingly, we remand for the trial court to reconsider whether termination is appropriate based on the other parental deficiencies of which the father had notice.

## FACTS

U.D.W. was born on September 15, 2015. When he was an infant, Child Protective Services became involved with the family after receiving a report about an alleged domestic violence incident. Investigation into the matter

uncovered concerns about the parents' drug use, safety issues, and prior violence between the parents.[1] In early January 2016, a fight broke out among the father's family members at the maternal grandmother's home when U.D.W. was present in the home. The father was arrested and eventually pleaded guilty to domestic violence assault of his mother. Shortly after this incident, the Department of Social and Health Services (Department) removed four-month-old U.D.W. from the care of his parents.[2] He has not lived with either parent since that time.[3]

In April 2016, when U.D.W. was seven months old, the court entered an order of dependency. The father stipulated that the child was dependent under RCW 13.34.030(c) for two reasons: because he was unavailable to parent due to his incarceration in jail, and because he needed to resume drug and alcohol treatment, services that he agreed were "necessary and appropriate." The court ordered the father to engage in drug and alcohol treatment, random urinalysis testing, parenting classes, and a domestic violence assessment.

In the year that followed, the father participated in a drug evaluation, intermittent drug treatment, and urinalysis testing, but he did not complete any drug and alcohol treatment program, did not participate in consistent urinalysis testing, and he did not remain consistently drug free. The father enrolled in parenting classes on two occasions, but was unable to complete either of the

[1] Child protective services investigated and determined the allegation of negligent treatment of U.D.W. to be unfounded.
[2] As of July 1, 2018, the new Department of Children, Youth, and Families has assumed the functions and duties of the Department of Social and Health Services related to child welfare services. See RCW 43.216.906.
[3] The court terminated the parental rights of U.D.W.'s mother and she is not a party to this appeal.

sessions. The father was unable to maintain stable housing. Although he was scheduled to complete a domestic violence assessment on several dates, he never completed an assessment. He maintained a generally positive relationship with U.D.W. through visitation, but was unable to exercise regular and consistent visitation throughout the dependency because of frequent arrests and periods of incarceration. The father's frequent short-term periods of incarceration in jail also impeded his ability to complete court-ordered services.

In April 2017, the child had been dependent for a year. The Department filed a petition to terminate the father's parental rights. The Department alleged that the father's parental deficiencies included a "substance abuse issues, mental health issues, domestic violence, ongoing criminal activity, lack of parenting skills, and lack of safe and stable housing."

At trial on the Department's petition, the court considered substantial evidence about the issues that led to the dependency and the father's progress toward correcting his identified parental deficiencies. The court also considered evidence about several aggressive and hostile interactions that occurred between the father and Department employees and others during the dependency. For instance, a Department supervisor testified about a time when the father went to the Department's office unannounced and became frustrated because the assigned social worker was not available to meet with him. He ultimately threatened a supervisor who tried to explain that he needed to make appointments. Security officers called the police and the Department moved the father's visitation to a different Department office. Visitation supervisors testified

about some instances during visits when the father became angry and verbally abusive. One Department social worker testified about an occasion when the father's visit was cancelled, and the following day, the father called the social worker 12 times. He threatened the social worker, who filed a police report. From then on, the Department did not permit the father to have direct contact with the social worker. The court also heard evidence indicating that the father's inability to control his anger was one of the issues that contributed to his frequent arrests and incarceration. For example, the father was convicted of criminal mischief after he broke the window of a bus out of frustration and was then prohibited from traveling on the bus.

The social worker assigned to the case testified that, in her opinion, the father was unfit to parent, in part because of his uncontrolled anger. In addition to unresolved substance abuse and domestic violence issues and recurrent criminal activity and incarceration, the social worker said that the father's "hostile attitudes" could impact his ability to parent. The Court Appointed Special Advocate, Ginny Jenkins, also testified that the father's "threatening" and "argumentative" behavior supported her position that termination of his parental rights was in the best interest of the child. Jenkins testified that the father's response to "frustrating circumstances" indicated he would be unable to cope with challenges he would face as a parent, and he would be unable to teach his child how to be resilient.

In closing argument, the Department's attorney argued that while there was no evidence that the father committed further acts of domestic violence

during the dependency, he had engaged in "continuing aggressive behavior." The Department asserted that the father's attempts to explain or excuse his behavior showed a lack of insight and immaturity. Because the father was unable to negotiate or interact with people in a civil manner, the Department claimed that he lacked the skills necessary to effectively parent.

At the conclusion of the trial, the court entered an order and written findings. The court's findings identify the father's problems controlling his anger as one of the parental deficiencies that he failed to correct during the dependency that rendered him currently unfit to parent.

Specifically, the court found that "[b]ecause of his issues with anger and violence and his untreated drug/alcohol issues, the father is currently unfit to parent the child." The court further found little likelihood that conditions would be remedied so that the child could be returned to the father in the near future, in part because the father's "untreated domestic violence and anger management problems and his interactions with others present a risk of arrest. There have been other negative impacts due to his anger issues: He cannot ride the bus and he could not have direct contact with his social worker. His anger can put the child at risk of physical and emotional harm." The court also found that although the father loves his son and wants to be a part of his life, because of his inability to stay "clean and sober and resolve his anger issues," he is "unfit to be the child's primary caregiver."

The father appeals.

ANALYSIS

Parents have a fundamental liberty interest in the care and welfare of their children. In re Dependency of Schermer, 161 Wn.2d 927, 941-42, 169 P.3d 452 (2007). Parental rights cannot be abridged without due process of law. In re Dependency of A.M.M., 182 Wn. App. 776, 790-91, 332 P.3d 500 (2014). In particular, due process requires "'that parents receive notice of the specific issues to be considered'" at a termination hearing. A.M.M., 182 Wn. App. at 791, quoting In re Welfare of Martin, 3 Wn. App. 405, 410, 476 P .2d 134 (1970). Such notice is necessary "'to prevent surprise, helplessness and disadvantage.'" A.M.M., 182 Wn. App. at 791, quoting Martin, 3 Wn. App. at 410.

The father alleges a due process violation because he was not notified during the dependency that his inability to control anger would be considered as a basis for terminating his parental rights. He relies on In re Dependency of A.M.M., 182 Wn. App. 776, 790-91, 332 P.3d 500 (2014) and In re Parental Rights of F.M.O., 194 Wn. App. 226, 231-32, 374 P.3d 273 (2016).

In A.M.M., the trial court terminated the mother's rights based, in part, on a parental deficiency not identified in the dependency or termination petition. A.M.M., 182 Wn. App. at 791-92. During the dependency, the Department focused on the mother's substance abuse issues. But during the termination hearing, the mother became aware of another parental deficiency that could support termination when a social worker testified that the mother lacked an understanding of her children's needs. A.M.M., 182 Wn. App. at 784. This court reversed the termination order and remanded for the trial court to strike the

finding that the mother's parental deficiencies included a lack of knowledge about her children's developmental needs. A.M.M., 182 Wn. App. at 792. While there were extensive findings about the mother's substance abuse, the trial court did not indicate that the mother's substance abuse alone was sufficient to warrant termination. On remand, we instructed the trial court to consider whether "termination is appropriate on the basis of the parental deficiencies of which [the mother] was given adequate notice." A.M.M., 182 Wn. App. at 793.

In F.M.O., the Department took custody of an infant who tested positive for drugs at birth and initiated dependency proceedings, alleging parental deficiencies of substance abuse, mental health, and a domestic violence history. 194 Wn. App. at 227. In terminating the mother's parental rights, the court also cited the mother's recurring incarceration, which inhibited her ability to parent, as an additional basis supporting the termination. F.M.O., 194 Wn. App. at 229. While rejecting the mother's position that parental deficiencies are limited to those expressly identified in the termination or dependency petition, Division Three of this court concluded there was nothing in the record to indicate that the mother was notified that her frequent incarceration was a deficiency that could be the basis for terminating her rights. F.M.O., 194 Wn. App. at 232. As in A.M.M., the court reversed the termination order and instructed the trial court on remand to consider whether termination was appropriate based on the identified deficiencies. F.M.O., 194 Wn. App. at 233.

The relevant circumstances here are indistinguishable from those in A.M.M. and F.M.O. According to the Department, notice to the father was

sufficient because it is "evident" that his anger played a role in other parental deficiencies, including domestic violence, recurrent arrests and multiple convictions, drug use, and inability to care for his child. But while the connection between anger and other identified parental deficiencies may have been obvious to the Department, there is nothing in the record to suggest that the father was aware of an inextricable connection that would allow notice of one issue to suffice for the other. Due process requires more. As the court stated in F.M.O., both sides "need to know what deficiencies are at issue since the State has to prove the deficiencies to make its case while the parent has to know what allegations to defend against." 194 Wn. App. at 232. Notifying the father of other issues he needed to address did not apprise him that the court could terminate his parental rights based on his failure to resolve anger issues.

The Department also points out that the father knew about the problematic incidents themselves, and because of actions taken by the Department in response to some of the incidents, he knew that the Department was concerned about his behavior. But knowledge of evidentiary facts does not equate to knowledge of the parental deficiencies the Department will rely on. If that were the case, then the mother's awareness of her own recurring incarceration in F.M.O. would have excused the Department's failure to notify her of its reliance on her recurring incarceration as a basis for termination. Nor does the fact that the father participated in a Department of Corrections program focused on problem-solving, that may have incorporated anger management skills, indicate the father's awareness that the Department had identified his anger as a parental

8

deficiency. And finally, the Department appears to contend that the father would have had notice of uncontrolled anger as a deficiency if he had participated in a domestic violence assessment, because there was testimony such an assessment would have likely led to a recommendation that the father engage in treatment to address his need for anger management. However, it is unknown what the results of such an assessment would have been. And no authority supports the Department's position that it is incumbent upon parents to discover by themselves what parental deficiencies they must defend against in termination proceedings.

Reliance on the father's anger issues as a basis for termination was error. And as was the case in A.M.M., despite thorough findings with regard to other identified deficiencies, in the absence of evidence that the other deficiencies established at trial justified termination, we must remand. The trial court must consider whether termination is appropriate on the basis of the parental deficiencies of which the father was properly notified. The court must also strike finding 2.40 and amend findings 2.41 and 2.44 to the extent they indicate that termination is based upon the father's failure to remedy his problems with anger.

The father also argues that because he was incarcerated in jail when the termination hearing began and released two days later while the hearing was still in progress, the trial court erred by failing to expressly consider the incarcerated parent factors set forth in RCW 13.34.145 (5)(b).[4]

---

[4] The father was transported from jail and attended the termination trial on the days he was incarcerated.

RCW 13.34.180(1)(f) requires a court to consider whether continuation of the parent-child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. If a parent "is incarcerated," that subsection also requires the trial court to consider whether the incarcerated parent maintains a meaningful role in his child's life based on factors listed in RCW 13.34.145(5)(b).[5] In re Parental Rights to K.J.B., 187 Wn.2d 592, 606, 387 P.3d 1072 (2017).

The father's claim is resolved by the Washington Supreme Court's decision In re Dependency of D.L.B., 186 Wn.2d 103, 122, 376 P.3d 1099

---

[5] The factors set forth in former RCW 13.34.145(5)(b) (2015) are

> (i) The parent's expressions or acts of manifesting concern for the child, such as letters, telephone calls, visits, and other forms of communication with the child;
>
> (ii) The parent's efforts to communicate and work with the department or supervising agency or other individuals for the purpose of complying with the service plan and repairing, maintaining, or building the parent-child relationship;
>
> (iii) A positive response by the parent to the reasonable efforts of the department or the supervising agency;
>
> (iv) Information provided by individuals or agencies in a reasonable position to assist the court in making this assessment, including but not limited to the parent's attorney, correctional and mental health personnel, or other individuals providing services to the parent;
>
> (v) Limitations in the parent's access to family support programs, therapeutic services, and visiting opportunities, restrictions to telephone and mail services, inability to participate in foster care planning meetings, and difficulty accessing lawyers and participating meaningfully in court proceedings; and
>
> (vi) Whether the continued involvement of the parent in the child's life is in the child's best interest.

(2016), where the mother was incarcerated until a little over a month before the termination trial began and the trial court failed to consider the incarcerated parent factors. The court held that the statutory factors did not apply to the mother, who was not incarcerated at the time of the termination hearing. D.L.B., 186 Wn.2d at 106, 122. The court held that the trial court must consider those factors "only when a parent 'is incarcerated' at the time of the termination ruling." D.L.B., 186 Wn.2d at 122. In this case, the father was arrested about a week before the termination trial began, on November 28, 2017. Trial began on Wednesday, December 6, 2017, and the father was released from jail on Saturday, December 9, 2017. The trial continued for another five days after the father's release.

The father argues that the holding of D.L.B. does not apply because unlike the mother in that case, he was incarcerated when the termination hearing began. But this is not a material factual distinction. In D.L.B., the court analyzed the plain language of the statute, which uses the present tense and requires the court to analyze the incarcerated parent factors if the parent "is incarcerated" when the court determines whether RCW 13.34.180(1)(f) has been proved. D.L.B., 186 Wn.2d at 116-17. The court also pointed out that other provisions of the amended statute already require the court to consider whether the Department did enough to provide all necessary and reasonably available services during the dependency, whether or not the parent was incarcerated during that period. D.L.B., 186 Wn.2d at 106. And perhaps most importantly here, the court concluded that the provision at issue, RCW 13.34.180(1)(f), is

forward-looking and "looks to the incarcerated parent's ability to parent in the future." D.L.B., 186 Wn.2d at 106.

The rationale of D.L.B. applies in these circumstances. The trial court did not err by failing to consider on the record the incarcerated parent factors.

We reverse and remand to the trial court for further proceedings.

*Becker, J.*

WE CONCUR:

*Mann, ACJ*